[No. 2070.   Decided March 10, 1896.]

## J. B. MONTGOMERY, *Appellant*, v. COWLITZ COUNTY, *Respondent*.

**TAXES — INVOLUNTARY PAYMENT — RECOVERY — CLOUD ON TITLE — ESTOPPEL.**

Under Code 1881, § 2937, providing that tax deeds should be conclusive of the regularity of the proceedings from the assessment to the execution of the deed, a sale of land for the non-payment of a tax which is illegal because the cost of surveying the land had never been paid as required by the act of congress granting lands to the Northern Pacific Railroad Company would cast a cloud upon the title, and payment of such tax under protest, to avoid a threatened sale, would be an involuntary one.

A land owner is not estopped to recover the amount of an invalid tax paid to the county involuntarily by the fact that, after such payment and prior to the commencement of the action, the county paid out the money to the various road and school districts of the county.

The payment of an illegal tax upon land before the owner is delinquent, and before the institution of proceedings looking to its collection or enforcement against the land, and before he has been called upon to pay by any officer, is not an involuntary payment within the rule relating to the recovery of such payments, although nominally paid under protest.

Appeal from Superior Court, Cowlitz County. — Hon. A. L. MILLER, Judge.   Reversed.

*R. E. Moody*, and *Stott, Boise & Stott*, for appellant.

*E. W. Ross*, for respondent.

The opinion of the court was delivered by

GORDON, J.—Appellant brought this suit to recover from Cowlitz county taxes paid by him under protest on the 8th day of September, 1885, to the sheriff of said county, amounting to $823.61, and also to recover the further sum of $357.10 for taxes paid by him (also under protest) on the same day to the treasurer of the

respondent county. All of the taxes so paid were levied and assessed upon lands lying in said county, purchased by appellant from the Northern Pacific Railroad Company; said lands being a part of the grant made by the United States to the railroad company by the provisions of the act of congress of July 2, 1864. On July 15, 1870, this act was amended by providing "that before any land, granted to the Northern Pacific Railroad Company by the United States, shall be conveyed to any party entitled thereto, . . . there shall first be paid into the treasury of the United States the cost of *surveying, selecting and conveying the same by said company or party in interest*"; and it appears that, up to the time of payment by appellant of the respective sums which he seeks in this action to recover, "the cost of surveying" the lands had not been so deposited. The case was tried in the lower court without a jury, upon the stipulation of parties as to the facts; and, having made its findings of fact, the court rendered judgment for the respondent county, from which judgment the case has been appealed. No exceptions were taken below, nor is any objection made here, to any of the findings of the lower court, but it is argued by counsel for appellant that the findings do not justify the conclusions nor judgment.

It is conceded that, under the acts of congress above referred to, the lands were not taxable at any time prior to the time when appellant made the payments in question. *Railway Co. v. Prescott*, 16 Wall. 603; *Northern Pac. R. R. Co. v. Traill Co.*, 115 U. S. 600 (6 Sup. Ct. 201).

As the circumstances surrounding the payment to the sheriff differ from those attending the payment to the treasurer, we will first consider the right of appel-

lant to recover the amount paid to the sheriff. This amount was paid for taxes levied and assessed upon the lands prior to the year 1885. Bearing upon this question, the lower court found:

"That all of said taxes were delinquent, and that the said sheriff had notified the plaintiff that he would sell the said lands for said taxes assessed thereon against plaintiff, unless the same were paid by plaintiff, and that the said sheriff had given public notice of the sale of said lands for said taxes, by publishing the delinquent list, with the total amount of said taxes, as provided by law, and threatened proceeding to sell said lands for the said taxes assessed thereon, when the same were paid by plaintiff."

There is much conflict in authorities as to whether, under the circumstances of a given case, a payment is to be regarded as voluntary or compulsory, especially where the payment is made to prevent a threatened sale or interference with real estate. Without attempting any analysis of the many cases bearing upon that question, we are satisfied to adopt the rule announced in *Detroit v. Martin,* 34 Mich. 170 (22 Am. Rep. 512):

"How would such sale have affected plaintiff's right or title thereto? Would such sale have constituted a cloud upon his title? Assuming that it would, *in order to prevent this, he could have paid the amount under protest, and afterwards have maintained an action to recover it back.* If a sale under the facts stated would not have constituted a cloud upon his title, then it may be at least doubtful whether the plaintiff has any remedy."

And we may add that there is much authority to be found in support of this view. *Bruecher v. Village of Port Chester,* 31 Hun, 551 (affirmed in 101 N. Y. 240, 4 N. E. 272); *Mills' Guardian v. City of Hopkinsville,* (Ky.) 11 S. W. 776; *Whitney v. City of Port Huron,*

88 Mich. 268 (50 N. W. 316, 26 Am. St. Rep. 291);
*Bucknall v. Story,* 46 Cal. 589 (13 Am. Rep. 220);
*State v. Nelson,* 41 Minn. 25 (42 N. W. 548); *Seeley
v. Town of Westport,* 47 Conn. 294 (36 Am. Rep. 70);
*Guy v. Washburn,* 23 Cal. 111; *Stephan v. Daniels,* 27
Ohio St. 527; *Valentine v. City of St. Paul,* 34 Minn.
446 (26 N. W. 457).

This brings us to the question of whether the sale
which was here threatened would, if consummated,
have created any cloud upon appellant's title.   Upon
the part of the respondent it is contended that the
lands were not subject to taxation and that the assess-
ment and all subsequent proceedings were absolutely
void, and that by a sale, as was contemplated, no
cloud would have been created upon appellant's title.

"A cloud upon one's title is something which con-
stitutes an apparent incumbrance upon it, or an ap-
parent defect in it; something that shows *prima facie*
some right of a third party, either to the whole or
some interest in it.   An illegal tax may or may not
constitute such a cloud.   If the alleged tax has no
semblance of legality; if upon the face of the proceed-
ings, it is wholly unwarranted by law, or for any
reason totally void, so that any person inspecting the
record, and comparing it with the law, is at once ap-
prised of the illegality, the tax, it would seem, could
neither constitute an incumbrance nor an apparent
defect of title, and therefore, in law, could constitute
no cloud.   .   .   .   When, however, the illegality or
fatal defect does not appear on the face of the record,
but must be shown by evidence *aliunde,* so that the
record would make out a *prima facie* right in one who
should become purchaser, and the evidence to rebut
this case may possibly be lost, or be unavailable, from
death of witnesses or other *cause, or when the deed
given on a sale of the lands* for the tax *would by
statute, be presumptive evidence* of a good title in the
purchaser, so that the purchaser might rely upon that

for a recovery of the lands until the illegalities were shown, the courts of equity regard the case as coming within their ordinary jurisdiction, and have extended relief on the ground that a cloud on the title existed, or was imminent." Cooley, Taxation, (1st ed.) pp. 542, 543.

Sec. 2937 of the Code of 1881, in force at the time of the payment in question, in reference to tax deeds provided:

"Such tax deed, duly acknowledged or proven, is (except as against actual fraud) conclusive evidence of the regularity of all other proceedings, from the assessment by the assessor, inclusive, up to the execution of the deed."

In this case the taxes paid to the sheriff were not invalid because of any illegality apparent upon the tax or assessment rolls, but because of the fact that technically the legal title was still in the United States — withheld solely because of the failure to deposit the cost of making the survey. Hence, as a matter of law, it could not have been ascertained from an examination of the record whether the taxes were valid or otherwise. Their validity depended upon whether a deposit of the cost of survey had *in fact* been made. Had the sale which was threatened actually occurred, and a tax deed issued, that instrument, upon its face, and so far as the public records disclosed, would have been valid, and appellant would have been obliged to resort to an action to remove the cloud caused by an instrument *apparently valid,* in order to show the facts which rendered it *invalid.* Under such circumstances, and to prevent the cloud upon his title which the threatened sale would have created, we think it was competent for him to pay the taxes to the sheriff under protest, as was done, and that payment under such

circumstances does not constitute a voluntary payment.

The lower court further found (although it is termed a "conclusion") "that after the payment of said taxes by plaintiff, and long prior to the time of the commencement of this action, unascertained amounts of said money having been paid by defendant to the Territory of Washington, and to the several road and school districts of said county, *plaintiff is estopped to recover any part of said money*." We are unable to perceive upon what principle the appellant should be held responsible for the acts of the respondent's officers, who were neither controlled by him nor acting under his directions; and, if the respondent has paid out any of the money which it wrongfully obtained from the appellant, that affords no sufficient answer in the present case. But, were the law otherwise, it would nevertheless be the duty of the respondent to show what amounts were so paid out, in order to avail itself of this plea. In the cases cited by respondent upon this point, it appeared that the defendants therein had no interest in or control over the fund collected. *Elberg v. San Luis Obispo Co.* (Cal.) 41 Pac. 475; *Pacific Mut. Life Ins. Co. v. San Diego Co., Id.* 423.

With reference to the payment to the treasurer, however, a different conclusion must be reached. The taxes so paid were levied and assessed for the year 1885, and at the time of the payment were not delinquent. No proceedings had been instituted looking to their collection or enforcement against the lands of the appellant. He had not been called upon to pay by any officer of the respondent. Hence we think that, although nominally paid under protest, it was in fact and in law a voluntary payment, and that the lower

court rightfully held that there could be no recovery of the amount so paid.

The judgment appealed from will be reversed, and the cause remanded, with directions to the lower court to enter judgment in favor of appellant for the sum of $823.61, together with interest thereon at the legal rate from September 8, 1885.

HOYT, C. J., and ANDERS, SCOTT and DUNBAR, JJ., concur.