[No. 4831.  Decided February 24, 1904.]

David Tozer, *Appellant,* v. Skagit County, *Respondent.*[1]

TAXATION—EXCESSIVE TAX—ACTION TO RECOVER—PAYMENT WHEN NOT VOLUNTARY. The payment of an excessive tax upon real estate under protest, after tendering a sufficient sum, which the treasurer refused to receive, giving notice at the same time that nothing less than the total sum would be accepted, is not a voluntary payment, and the tax payer may recover the amount illegally exacted, especially in view of the present statute making the tax a lien, and postponing its enforcement for three years (*Montgomery v. Cowlitz County,* 14 Wash. 230, overruled).

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered July 16, 1903, upon granting a nonsuit, dismissing an action to recover an excessive tax paid under protest. Reversed.

*Million & Houser,* for appellant.

*J. C. Waugh,* for respondent.

Fullerton, C. J.—In this action the appellant sought to recover from Skagit county the sum of $464.88, paid as

[1]Reported in 75 Pac. 638.

taxes on certain lands belonging to him, situated in and subject to taxation in that county. The facts shown by the record, upon which the appellant bases his right to recover, are substantially these: In 1900 the lands mentioned were regularly assessed for taxation by the assessor of Skagit county, and their values duly equalized and fixed by the board of equalization for the ensuing biennial period. In 1901 the board conceived that the lands were not assessed at their actual value, and proceeded to and did, without notice to the appellant, raise the value of the lands between fifteen and twenty per centum over the valuation fixed in 1900. The auditor carried out the taxes for the year 1901 on the new valuation, increasing the tax on the property over what it would have been, had the valuation of 1900 been allowed to remain, by the amount above stated.

In March, 1902, the appellant tendered to the treasurer a sum of money sufficient to pay the taxes on the land at the valuations of 1900, which sum the treasurer refused to receive, notifying the appellant that he would not accept any sum in payment of such taxes less than the full amount shown by the rolls to be due thereon. The appellant thereupon paid the full amount assessed against the land, notifying the auditor that he paid the difference between the sum actually paid and the sum he would have been required to pay, had the assessment been made on the valuation of 1900, under protest, and that he would forthwith bring an action against the county to recover back the same. Thereafter he presented to the county his claim for the amount overpaid, and, on its rejection by the board of county commissioners, brought this action. On the trial he was non-suited, and a judgment of nonsuit entered against him, from which judgment he appeals.

It is not disputed that, in so far as is shown by the record before us, the attempted increase in the valuation of the

appellant's property was without authority, and therefore void; but it is contended that, under the rule heretofore laid down by this court, the payment was voluntary and cannot be recovered, even though the assessment be void; and it was on this ground that the trial court granted the nonsuit. The case which was thought to be controlling is *Montgomery v. Cowlitz County*, 14 Wash. 230, 44 Pac. 259. In that case we did hold that a payment of taxes to the county treasurer before they became delinquent, and before any proceedings were instituted looking to their enforcement, was a voluntary payment although nominally paid under protest, and could not be recovered back even if the tax paid was illegal. That case undoubtedly followed the rule as announced in a majority of the states having statutes similar to the one then existing in this state relating to the assessment and collection of taxes, and, if the statute had been suffered to remain as it then was, we would be content to follow it.

But a radical, if not fundamental, change has been made in the statute since the time of that decision. Then all taxes were personal and assessed against the person, and it was necessary to exhaust the personal property of the individual against whom the taxes were assessed before real property could be sold in satisfaction thereof; the statute especially enjoining the tax collector to "use due diligence and search to find said personal property." The delinquent list was placed in the hands of the sheriff for collection immediately after the taxes became delinquent, and that officer proceeded to enforce collection at once. It was thus possible, under that system, to have a determination of any question touching the legality of a tax within a reasonable time after the same became a lien on real property, and the rights of the taxpayer were not seriously jeopardized by being obliged to wait, before instituting a proceeding for

that purpose, until it was certain that the collecting officers would undertake to enforce collection of the tax.

But under the system for the levy and collection of taxes now provided by statute, taxes on land values are charged directly to the land, and not to the person of the owner, and the owner's personal property is not liable, nor can it be sold for the satisfaction of such taxes. While a period is fixed when penalties are added and taxes become delinquent, no active steps can be taken looking to the enforcement of the tax until three years after that time, and then only in the case where some individual has purchased the certificate of delinquency; the county itself not being permitted to enforce collection until five years have elapsed from date of delinquency, notwithstanding the law makes the tax a lien on the land from the first day of March in the year in which it is levied until it is paid. If, therefore, it be the rule that a land owner cannot contest in the courts the validity of a tax levy before active steps are taken to enforce its collection, the present law will in many instances prove a practical confiscation of property; for, no matter how unjust or how illegal the tax may be, the necessity of removing its apparent lien before the time the courts can take cognizance of it will compel its payment by the owner. While the state has the right to insist, and must insist, that each parcel of property bear its just proportion of the public burden, it requires no unjust exactions, and has no intent to frame its laws so as to require them, and we do not think such was the purpose of this statute.

But looking at the question from the state's point of view, it would seem that the change in the statute has made a change in the rule desirable. It is surely to the interest of the state, as well as the individual, that disputes concerning the validity of a tax be speedily determined. If payment of taxes in any considerable amounts is withheld,

a deficiency is created, which results in the accumulation of interest bearing obligations, and the consequent diversion of money to the payment of interest on obligations which was intended to be, and should have been, applied to the obligations themselves. But, more than this, it is a matter of common knowledge that errors in the assessment and levy of taxes, even when sufficient to render the tax uncollectible, can be and generally are remedied when discovered within a reasonable time after they are made; while a discovery after a long delay usually results, not only in a total loss of the tax attempted to be levied, but in the loss of the amount of tax the property assessed in justice ought to pay.

It has seemed to us, therefore, that the change in the statute has rendered the case relied upon inapplicable; but if it be true, as the respondent argues, that no right distinction can be made between the statutes existing at the time the case above cited was decided and the present statute in regard to the time protest should be made, we think the change in the statute requires that the case be overruled. While to depart from precedent is always a serious matter, we can do it in this instance with less regret, as we think there was not much reason for the rule as applied to the former statute. The purpose of protest, under any system of taxation, is to give notice that the right to collect the tax is disputed. This is required that the state may not unwittingly receive payment of a tax to which it has no legal right, and thereby subject itself, against its will, to the costs of an action brought to recover it back. But it would seem that protest, made at a time when the tax was due and collectible and the state was actively engaged in receiving taxes, would be as effective to protect it from actions against its will as would a protest made when coercive measures were being taken to collect the tax. The officers

of the state have the same opportunity and legal right to inquire into the validity of the claim when made at the one time as they do when made at the other, and there is no sound reason for holding a payment of taxes made under the first condition to be voluntary and under the other to be coercive.

The judgment appealed from is reversed, and the cause is remanded with instructions to proceed to a trial on the merits.

HADLEY, MOUNT, and DUNBAR, JJ., concur.

ANDERS, J., concurs in the result.