[No. 14161.   Department Two.   August 29, 1917.]

PITTOCK & LEADBETTER LUMBER COMPANY, *Appellant*, v. SKAMANIA COUNTY, *Respondent*.[1]

TAXATION—RECOVERY OF EXCESS—ACTION—CONDITIONS PRECEDENT. Tax payments voluntarily made upon overvaluation and excessive assessments cannot be recovered, and a complaint therefor is ·demurrable when it fails to show that the payments were made under protest or duress of any kind.

Appeal from a judgment of the superior court for Skamania county, Back, J., entered March 22, 1917, upon sustaining a demurrer to the complaint, dismissing an action to recover taxes paid.   Affirmed.

*Henry Crass*, for appellant.

*R. M. Wright* and *Miller & Wilkinson*, for respondent.

MOUNT, J.—Appellant brought this action to recover from Skamania county an alleged overpayment of taxes on erroneous assessments for the years 1910, 1911, 1912, 1913, and 1914, and for erroneous extensions of tax rolls in 1910 and 1912.   The amount sought·to be recovered is $2,167. The trial court sustained a general demurrer to the amended complaint, the plaintiff refused to plead further, and the action was dismissed.   This appeal followed.

Five different causes of action are alleged in the complaint, based upon alleged overpayment of taxes for each of the

[1]Reported in 167 Pac. 108.

years named.   Five different parcels of real estate are included in each of the five causes of action.   The complaint, after formal allegations, alleges as follows:

"That during the year 1910, the assessor of Skamania county, Washington, defendant herein, assessed the west half of section 5, in township 2 north of range 5 east, at a valuation of $2,000 and, according to the rate of Skamania county for said year the plaintiff was compelled to pay thereon and did pay the sum of $38.40 in taxes.   That said assessed valuation was an arbitrary, fraudulent, palpably excessive and exorbitant over-valuation of said property and without regard to the true valuation of said property and not in comparison with other property assessed in the vicinity of the aforesaid lands; that said property did not have an assessable valuation to exceed $800.   That the valuation arrived at by the assessor of $2,000 was because of its alleged merchantable timber and that the difference between the true valuation of $800 and the valuation found by the assessor of $2,000 was because of the alleged amount of merchantable timber thereon.   That the valuation placed on said property to the extent of $1,200 by reason of its alleged merchantable timber was an erroneous valuation and assessment for the reason that said lands did not contain any timber of assessable valuation and that by reason of the arbitrary, fraudulent, palpably excessive and exorbitant and erroneous over-valuation of said lands and timber the plaintiff was compelled to and did pay for said year in excess of the true amount based upon a proper valuation, the sum of $23.04."

This same allegation was made as to each of the other tracts of land, and for each of the years named, except for the amounts therein.

It is argued by the appellant that the complaint shows an overassessment of the property because timber thereon was included in the valuation, when, in fact, there was no assessable merchantable timber thereon.   Conceding that there was an overvaluation of the land, it does not follow that, when taxes are voluntarily paid upon an overvaluation, the amount may be recovered back.   The complaint does not show that the taxes were paid under protest, or under duress

of any kind. It simply alleges that there was an overvaluation of land and that taxes were paid thereon, and that, by reason of the arbitrary, fraudulent, palpably excessive, exorbitant, and erroneous overvaluation of said land, plaintiff was compelled to, and did, pay an excessive amount. The complaint does not show when the payments were made, and that they were not made voluntarily. The general rule is stated in 37 Cyc., at pp. 1178 and 1179, as follows:

"Whatever may be the ground upon which objection to a tax or to the assessment of it may be made, it is a well settled general rule that if the tax is paid by the person assessed voluntarily and without compulsion it cannot be recovered back in an action at law, unless there is some constitutional or statutory provision expressly or impliedly giving him such right although the tax is paid without compulsion. . . .

"A payment is voluntary, in the sense that no action lies to recover back the amount, not only where it is made willingly and without objection; but in all cases where there is no compulsion or duress nor any necessity of making the payment as a means of freeing the person or property from legal restraint or the grasp of legal process."

Numerous authorities are there cited to support the text. There is no constitutional or statutory provision in this state giving the right to recover back a voluntary payment of taxes. In the case of *Tozer v. Skagit County*, 34 Wash. 147, 75 Pac. 638, in referring to the case of *Montgomery v. Cowlitz County*, 14 Wash. 230, 44 Pac. 259, we said:

"In that case we did hold that a payment of taxes to the county treasurer before they became delinquent, and before any proceedings were instituted looking to their enforcement, was a voluntary payment although nominally paid under protest, and could not be recovered back even if the tax paid was illegal. That case undoubtedly followed the rule as announced in a majority of the states having statutes similar to the one then existing in this state relating to the assessment and collection of taxes, . . ."

We overruled that case in so far as it held that a tax paid under protest might be voluntary. We did so in view of the

statute that required three years time before a tax could be enforced. But we held in the *Tozer* case that an excessive tax paid under protest might be recovered back. This court has not held, however, that a tax voluntarily paid might be recovered back in an action at law. It is true the complaint in this action states that the plaintiff "was compelled to, and did, pay the taxes," but the compulsion referred to there was by reason of the fact that the lands were overvalued by the assessor. It is not claimed in the complaint or in the brief that the appellant did not pay its taxes in the ordinary way before they had become delinquent, or that it made any protest at the time of payment that the lands were overvalued or the taxes were excessive.

In the *Tozer* case, *supra,* we said:

"The purpose of protest, under any system of taxation, is to give notice that the right to collect the tax is disputed. This is required that the state may not unwittingly receive payment of a tax to which it has no legal right, and thereby subject itself, against its will, to the costs of an action brought to recover it back. But it would seem that protest, made at a time when the tax was due and collectible and the state was actively engage in receiving taxes, would be as effective to protect it from actions against its will as would a protest made when coercive measures were being taken to collect the tax."

We think that is the correct rule. It was the duty of the appellant to know the valuation of his land at the time he paid his taxes, and to call the attention of the collecting officers thereto and protest the payment. Since the appellant did not do this, and since he paid his taxes voluntarily in the ordinary way, he cannot, under the uniform current of authority, maintain an action to recover taxes, although excessive, which are voluntarily paid. For this reason, the judgment is affirmed.

ELLIS, C. J., HOLCOMB, FULLERTON, and PARKER, JJ., concur.