[No. 20195. Department One. November 12, 1926.]

# H. E. BYRAM *et al., as Receivers of the Chicago, Milwaukee & St. Paul Railway, Respondents,* v. THURSTON COUNTY, *Appellant.*[1]

[1] TAXATION (118)—RECOVERY OF TAX PAID—RIGHT TO RECOVER. A tax payer whose property has been illegally or excessively taxed may recover taxes paid under protest.

[2] SAME (118, 122)—ACTIONS TO RECOVER—DEFENSES—AGENCY OF COUNTY. A county, collecting an illegal tax placed on railroad property by the unauthorized act of the state board of equalization, cannot escape liability·for its return by the fact that it acted only as a collecting agency and had apportioned and disbursed the funds to the state and other taxing districts before suit brought.

[3] SAME (118, 122). A county is liable for the amount of illegal or excessive taxes exacted and paid under protest, notwithstanding the tax payer may have other equitable remedies, and notwithstanding Rem. Comp. Stat., § 11276, forbidding the county commissioners from changing the valuations or releasing or commuting any part of the taxes due.

[4] COUNTIES (95)—TAXATION (122)—FILING CLAIM AS CONDITION PRECEDENT TO ACTION FOR REFUND. A claim against a county for the repayment of excessive taxes is not a claim for "damages," within Rem. Comp. Stat., § 4077, requiring presentation of claims for damages within sixty days as a condition precedent to action against the county.

[5] TAXATION (119)—PAYMENT—PROTEST—SUFFICIENCY. A written demand upon the county commissioners and county treasurer for the return of an excessive tax, made immediately after the payment of the tax under protest, and within any applicable period of limitations, is a sufficient compliance with Rem. Comp. Stat., § 4076, to support an action against the county.

[6] SAME (119). In the absence of the statute prescribing a particular form of protest in paying illegal taxes, the courts can require none, and it is sufficient to give notice that the right to collect the tax is disputed.

[7] SAME (90, 93)—EQUALIZATION—AUTHORITY OF BOARD TO INCREASE TAX—NOTICE. A railroad's voluntary appearance before the state

[1]Reported in 251 Pac. 103, 252 Pac. 943.

board of equalization does not give the board jurisdiction to increase the tax without notice of its intention under Rem. Comp. Stat., § 11169, which provides that railroads shall have the right to appear and be heard, and that the board may correct the valuations but shall not increase them without notice to the company by registered letter fixing the time for a hearing upon the increase contemplated.

[8] SAME (122)—ACTIONS TO RECOVER TAXES PAID—PARTIES. The state tax committee is not a necessary or proper party to an action against a county to recover an excessive tax, collected by the county, since the committee would have no power to reassess the tax, and the state equalization board could not meet and correct it.

[9] SAME (118)—RECOVERY OF TAX PAID—INTEREST. In an action to recover an excessive tax, levied without jurisdiction and void and paid under protest, the plaintiff is entitled to legal interest on the excess from the date of payment.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 15, 1926, upon findings in favor of the plaintiffs, in an action for the recovery of taxes paid under protest, tried to the court. Affirmed.

*The Attorney General, R. G. Sharpe, Assistant,* and *Roscoe Fullerton,* for appellant.

*F. M. Dudley, George W. Korte,* and *A. J. Laughon,* for respondents.

HOLCOMB, J.—This appeal is from a judgment for the recovery of taxes for the year 1924, paid under protest by respondents in 1925. The facts found by the trial court are, in substance, these:

In 1924 the operating properties of the Chicago, Milwaukee & St. Paul Railway Company in Washington, were assessed by the director of taxation, acting through the division of taxation, at $45,707,922, and an assessment roll duly prepared was returned to the state equalization committee, which convened according to law September 2, 1926.

On August 11, 1926, prior to the return of the taxation roll to the equalization committee, the director of taxation notified the railway company in writing of the amount at which the properties had been assessed, adding:

"You are also advised that this valuation is subject to change by the state board of equalization, but, if any increase is contemplated, special notice will be given."

On August 28, 1924, the supervisor of taxation, who is by law *ex-officio* secretary of the state equalization committee, notified the railway company in writing as follows:

"The following dates have been set for hearings before the state equalization committee at its regular session meeting in the governor's committee room, Insurance Building, beginning Tuesday September 2, 1924; Eastern Washington counties, Tuesday, September 2d, 1:30 P. M.; Western Washington counties, Wednesday, September 3d, 10:00 A. M."

On the day above specified for hearing, the railroads and the tax agent of the railway company appeared and made a plea for a reduction in the assessment of the company's property, as returned by the director of taxation. The equalization committee did not grant the plea for a reduction, but increased the value of the operating properties of the company, as assessed and returned, two per cent, thereby raising the assessed valuation of the company to $46,640,788, or a total increase of $932,816. No notice of any increase in valuation, as contemplated, had ever been given to the railway company, the only notice given being the notices of August 11, and August 28, 1924, above mentioned. Both of them were given before the equalization committee convened.

The equalization committee thereupon proceeded to apportion the increased valuation between the several

counties in the state in which the company's lines extended, in the manner provided by statute, and certified to the assessor of each of the counties the equalized valuation of the part of such operating property apportioned to such county. The portion of such valuation certified to the treasurer of Thurston county was $536,884. Had the valuation been apportioned in the amounts fixed by the director of taxation, the amount certified to Thurston county would have been $526,146, or $10,738 less than the amount apportioned.

The amounts certified to the assessors of the various counties interested was so certified September 18, 1924, and the state equalization committee thereupon adjourned *sine die.* No information was received by the company of the increase in the assessment by the equalization committee until after the adjournment of the committee.

The county assessor of Thurston county, after the receipt of the apportionment as certified by the equalization committee, entered it upon the county assessment rolls, and thereafter the taxes levied in the year 1924 for state, county, city, town, road district, school district and other purposes were extended against the amount so certified by the equalization committee, or the portion thereof within the taxing district levying the taxes. The aggregate of the tax was $33,375.39. If the amount certified by the equalization committee to the assessor of Thurston county had been its proportion of the total value of the properties as assessed by the director of taxation, instead of the increased amount as fixed by the equalization committee, the aggregate of the tax so extended would have been $32,707.88, instead of $33,375.39. This increase in the valuation by the state equalization committee resulted in an increase in the tax upon the company's property in Thurston county of $667.51.

March 13, 1925, the company paid that portion of the taxes levied upon its operating properties in Thurston county, which had been levied upon so much thereof as was assessed as personal property. May 29, 1925, receivers had been appointed for the company, who paid one-half of the portion of such tax levied upon the railway operating property in the county assessed to the real property; and on November 27, 1925, they paid the second half of such real property taxes. The total amount of such payments aggregated the full taxes extended against the railway company's properties, which were illegal, if the increase of valuation by the state equalization committee was illegal.

Each of the payments so made was made under a written protest, endorsed upon the voucher check by which the same was made. Those protests were the same in each case, and, excepting as to the amount protested, were in the following form:

"Paid under protest as to $..... (the amount being filled in) excess tax account full value of C. M. & St. P. Ry. operating properties in Washington for 1924, placed at $46,640,788.00 instead of $45,707,972.00."

The receipts for these payments were endorsed by the county treasurer at the time of delivering them as "Paid under protest."

Immediately upon making the final payment in 1925, the receivers, through their agent, made written demand for the return of the $667.51 so paid under protest, as follows:

"Seattle, Washington, November 27, 1925.

"To the County Commissioners of Thurston County; County Auditor Thurston County; County Treasurer Thurston County:

"The undersigned, the Chicago, Milwaukee & St. Paul Railway Company, by its Receivers, demands the return to it, with interest at the rate of 6 per cent per

annum from the date payment was heretofore made, of the amount of excess taxes heretofore paid by said railway company to the county treasurer of Thurston county, Washington, for the year 1924, having increased the full or true value of this company's properties in Washington for taxation purposes, from a valuation of $45,707,972.00 as theretofore fixed by the State Supervisor of Taxation, to a valuation of $46,-640,788.00, without authority in said state board so to do.

"The amount of excess taxes heretofore paid by the undersigned, and the dates of payment are as follows: such excess tax was in each case paid under protest:

"Personal property taxes, $74.99, paid the treasurer on March 13, 1925; First half real property taxes $296.26, paid to treasurer on May 29, 1925; Second half real property taxes $296.26, paid to treasurer on November 27, 1925.

"(Signed) Receivers of Chicago, Milwaukee & St. Paul Railway,
          "By Floyd Williams,
          "Assistant to Tax Commissioner."

A copy of this demand was served upon the county treasurer, one upon the county auditor, and one delivered to the county auditor, as *ex-officio* clerk of the board of county commissioners.

It is admitted and alleged in paragraph 10 of the answer of appellant that no action was ever taken by the board of commissioners on the claim presented by the receivers, and that appellant has not paid, and does not intend to pay, the sum of $667.51 or any part thereof to respondents.

After waiting until the latter part of February, 1926, for the county to act, respondents filed their complaint for the recovery of the above sum, alleging the matters hereinbefore stated with reference to the assessment of the railway operating properties by the director of taxation, and the increase in the valuation

by the state equalization committee, the apportionment and certification of the value to Thurston county, the extension of the taxes, the payments under protest, and the demand for the return of the alleged illegal excess.

After a demurrer to the complaint had been overruled, appellant answered, admitting many of the allegations of the complaint, denying others, in whole or in part, and, in addition to the admissions and denials, presented two affirmative defenses: (1) that, after the payment of the personal property tax and the first half of the real property tax by the railway company and the receivers prior to October 1, 1924, portions of these funds collected for said purposes, road, and school districts, the school fund, bond redemption fund, and Port of Olympia fund, were disbursed by the county treasurer to the state, districts and funds in which the same were levied; and that these disbursements were made without notice that the railway company or receivers claimed that any portion of this tax was illegal, or contemplated any action for its recovery; (2) that, by its appearance and plea for reduction to the valuation as assessed by the director of taxation, the railway company vested the equalization committee with jurisdiction to increase that assessed valuation.

A motion to strike the first affirmative defense, and a demurrer to the second affirmative defense, were sustained. At the trial the evidence designed to establish these affirmative defenses was rejected, on objection by respondents.

[1] It is first contended by appellant in support of its assignments, that the court erred in holding that respondents had a right of action against the county upon the alleged wrong in which state officers, if any, were exclusively responsible; that Thurston county, being merely a collecting agency and thus having done

no wrong, cannot be mulcted for damages for the wrong done by the state equalization committee.

In a previous proceeding between the Northern Pacific Railway Co. and the state board of equalization, (140 Wash. 243, 248 Pac. 793, and 140 Wash. 701, 248 Pac. 793), involving the alleged illegal acts of the state board of equalization, of 1925, we held that, while the proceeding to review an order of the state board of equalization concerning its alleged illegal acts would not lie, because the merits of the controversy could not be brought before us, or before the lower court for determination, inasmuch as the state board of equalization was limited in its existence to twenty days each year, and had gone out of existence; but we also said:

"The conclusion we have reached does not leave the relator without remedy. It can, when the tax is made a lien upon its property, test its validity by a suit in equity against the officers seeking to collect the tax, in which suit it may bring forward any matter showing that the tax is unjust or arbitrary, even though the inquiry may involve the action of the equalization board."

That ruling was made advisedly and, we think, justly. No taxpayer is to be mulcted of taxes illegally and without remedy. The tax had become a lien upon the taxed property. Respondents promptly brought their action against the county in which part of the properties lay, to test the validity of the increased valuation made by the equalization committee, against the county which had collected the tax. The members of the state equalization committee could not be brought into the suit, for, as we said in that decision, that board had gone out of existence. Nothing could be required of it. The county, as a legal subdivision of the state, is a complete and effective agency of the state. It is probably the only suable body or corporation in such a case as we have before us.

Appellant admits that we have repeatedly recognized the right of a taxpayer whose property has been excessively or illegally taxed by county officers to recover judgment against the offending county for the amount of the excessive or illegal tax when paid under protest. *Tozer v. Skagit County,* 34 Wash. 147, 75 Pac. 638; *Owings v. Olympia,* 88 Wash. 289, 152 Pac. 1019; *Stimson Timber Co. v. Mason County,* 97 Wash. 205, 166 Pac. 251; *Pacific Coal & Lumber Co. v. Pierce County,* 133 Wash. 278, 233 Pac. 953.

[2]   Appellant insists, however, that the above cases are not precedents, because in them the illegal or excessive assessments were made by county officers and consequently the county itself, through its officials, was guilty of the wrongful act; and that in none of the foregoing cases did the court consider the effect of Rem. Comp. Stat., § 11276 [P. C. § 6983], forbidding county commissioners from changing valuations of property of any person, or releasing or commuting, in whole or in part, the taxes due on the property of any person.

As to the first proposition, the system whereby the property of railway companies is now assessed and taxed as a part of a general comprehensive system by which the state taxation committee, in the first instance, and the state equalization committee, in the second instance, act for and on behalf of the counties, as well as the state. In collecting the tax the county acts for and on behalf of the state and all other taxation districts. All taxes, legal and illegal pass first into the coffers of the county and are disbursed from there. As was said in *Ward v. Love County,* 253 U. S. 17:

"As the payment was not voluntary but made under compulsion, no statutory authority was essential to enable or require the county to refund the money. It is well settled rule that 'money got through imposition'

may be recovered back; and as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if the county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' "

As to § 11276, *supra*, which has been the law since 1915 (Laws of 1915, p. 347, § 3), it was obviously a wise legislative policy that forbids boards of county commissioners from changing the valuation of property of any person, or releasing or commuting in whole or in part the tax due on the property of any person, after the valuations have been equalized and the tax levied upon such bases. Under the statute, of course, the county commissioners could not refund to respondents the tax which had been ordered to be assessed upon the railway properties in the county by the equalization committee. Nor could they now do so under the old law providing for county equalizations. That, however, does not relieve the county of its obligation to return taxes illegally or excessively taxed. Such funds are "moneys got through imposition," and the obligation to do justice rests upon all persons, natural or artificial; and, if the county obtains money or property from others without authority of law, independent of any statute compels restitution or compensation.

In this connection, it is also suggested that the remedy sought in this action is not proper, and that certiorari and various other equitable remedies were available. But under our holding in *State ex rel. Northern Pacific R. Co. v. State Board of Equalization, supra,* certiorari would not lie. We have, in effect, approved the form of action in the present case, in many cases heretofore before us to prevent the collection of illegal or excessive taxes; and we see no reason why it should not apply to recover taxes illegally or excessively levied

and paid under protest. In fact, it seems to us to be more in consonance with orderly justice than some other forms of action.

"The proper administration of the fiscal affairs of the government, require that the payment of taxes should not be delayed by disputes as to their legality, but that the taxes should first be paid and all questions in regard to them be determined in suits brought for their refunding. It is a wise policy, therefore, that encourages the payment under protest of disputed taxes." *Herold v. Kahn,* 159 Fed. 608; *Stimson Timber Co. v. Mason County,* 97 Wash. 205, 166 Pac. 251.

In some states the statutes require such procedure, as in Michigan. *Cox v. Welcher,* 68 Mich. 263, 36 N. W. 69, 13 Am. St. 339.

[3] In support of the next assignment of error, it is urged that the claim for recovery of a void tax is a claim for damages, which must be presented to the county commissioners within sixty days after accrual. It is argued that the presentation of a claim against the state or a county, where required by law or an ordinance, is a condition precedent to an action thereon, and failure to file such claim is not only a subject of defense, but must be alleged and may be taken advantage of by demurrer. Citing *Collins v. Spokane,* 64 Wash. 153, 116 Pac. 663, 35 L. R. A. (N. S.) 840; *Lenhart v. Hoquiam,* 86 Wash. 168, 149 Pac. 650; *Howe v. Whitman County,* 120 Wash. 247, 206 Pac. 968, 212 Pac. 164.

Rem. Comp. Stat., § 4077 [P. C. § 1664a] is quoted, which provides that all claims for damages against a county must be presented to the county commissioners of such county and filed with the clerk thereof, within sixty days after the time when such claim for damages accrued, etc.

The claim sued on herein is not a claim for damages, or an action in tort, but is a claim for money had and

received.   Only those cases sounding in tort and giving rise to actions for damages are contemplated by the above statute.   The same section provides that:

"All such claims for damages must locate and describe the defect which caused the injury, describe the injury, and contain the amount of damages claimed, together with a statement of the actual residence of such claimant at the time of presenting and filing such claim and for a period of six months immediately prior to the time such claim for damages accrued, and sworn to by the claimant."

These are claims which, under Rem. Comp. Stat., § 4056, [P. C. § 1664] must, under usual conditions, be presented to the county commissioners for allowance or rejection as a condition precedent to the maintenance of an action thereon.   *Old National Bank v. Lewis County,* 137 Wash. 436, 242 Pac. 961.   But they are not claims for damages which must be presented within sixty days and in the form prescribed by Rem. Comp. Stat., § 4077 [P. C. § 1664a].

An action for money had and received is based upon a quasi-contract, or an implied contract.   A contract implied in law is an obligation imposed upon a person by the law, not in pursuance of his intention and agreement, either expressed or implied, but found against his will and design, because the circumstances between the parties are such as to render it just that one should have a right and the other a corresponding liability similar to that which would arise from a contract between them.   This kind of obligation rests upon the principle that whatsoever it is certain a man ought to do, that the law will suppose him to have promised to do.   Such obligations are more properly described as quasi-contracts.   Black's Law Dictionary, 2d ed.; subject, Contracts, and citations there given.

It is immaterial that the county treasurer and the county commissioners, under the section of the statute

heretofore discussed, are expressly forbidden to contract to refund taxes illegally imposed. It is an obligation of the law arising out of the situation.

Nor is the case of *State ex rel. Godfrey v. Turner,* 113 Wash. 214, 193 Pac. 715, in point; that being an action in mandamus to compel respondent, the treasurer of Pierce county, to accept a tender of a certain amount as full payment of certain taxes. It was there held that that form of action was not necessary in order to adequately protect the relator's interest, and several other forms of action which had been permitted and cited in the opinion which might have been followed, were referred to.

Respondents were, in law, required to file a claim with the county, and did so. The claim filed by them was not verified, and was not in the form required in a case based upon tort and damages. It did, however, give notice to the county that respondents claimed that the taxes were excessive and illegal, and stated the amount claimed to be illegal. Within three months thereafter, the county having failed, and, of course, being prohibited from refunding the illegal tax, this action was instituted. We think there is no merit in this contention of appellant.

[4] The third assignment of error is that it was error to hold that respondents were not required to file their claim under Rem. Comp. Stat., § 4076 [P. C. § 1679]. We think what we have heretofore said sufficiently disposes of this contention, since it appears that claims were filed by respondents within any applicable period of limitations; as to such claims as were necessary the law was complied with.

It was also filed within a reasonable time, since it was filed immediately after the payment of the taxes under protest. This answers the fourth assignment.

[5]  The fifth assignment is that the alleged protests under which the taxes were paid by respondent were insufficient, in that the grounds of protest were not set forth.

In *Tozer v. Skagit County, supra,* the protest apparently had been oral, and we sustained the action for the recovery of the illegal tax paid, saying:

"The purpose of protest under any system of taxation, is to give notice that the right to collect the tax is disputed."

No particular form of protest is required by statute. When the statute prescribes no specific conditions in making protests, it would seem that the courts can require none. *Murdock v. Murdock,* 38 Utah 373, 113 Pac. 330. We are satisfied that the protest made by respondents was sufficiently explicit.

[6]  The sixth assignment of error alleged by appellant is that the plaintiff, having appeared generally before the board of equalization and asked for a reduction of its assessment and thereby invited a revaluation of its property, waived notice of a possible increase in such assessment.

Rem. Comp. Stat., § 11169 [P. C. § 7078], after providing that the assessment rolls of railway companies shall be submitted to the state board of equalization at its annual meeting, then further provides that any railroad company interested shall have the right to appear and be heard as to the assessment of the property of such company, and as to the value and assessment of the general property of the state; and the board of equalization may, upon application, or by its own motion, correct the valuation or assessment of the property of such company in such manner as may, in its judgment, make the valuation thereof equal with the general valuations of the state. It is then provided that the assessed valuation

of the property of the railroad company as it appears on such rolls shall not be increased without notice to the company by registered letter that such increase is contemplated, and fixing a time for hearing in relation thereto.

It is true, that the railway company voluntarily appeared before the state board of equalization asking for a reduction of its assessment. No notice was ever given it that the equalization committee ever contemplated increasing its assessment. On the contrary, it had notified the company that, in case of any contemplated increase, notice would be given it. That notice was not given.

Under the provisions of the sections of the statute cited, the state equalization committee, being a tribunal with special and limited powers, could acquire no jurisdiction except in the manner provided by statute. Respondents had the right to appear before the equalization committee, asking for a reduction of its valuations. It was not there under compulsory jurisdiction to answer to any attempt to increase its valuations. The facts in such case would undoubtedly differ very greatly. A very similar case was that of *Birch v. Board of Supervisors*, 191 Cal. 235, 215 Pac. 903. A statute in California gives power to the board to raise the assessor's valuations, if notice of the action is given the taxpayer. There, plaintiff appeared and petitioned that the assessor's valuations be reduced. The board denied his petition and raised the valuation of his property without notice. It was contended that the raise was lawful because plaintiff had made an appearance and petitioned for a reduction, and that, therefore, no notice was required. The court said:

"The order increasing the amount of the assessment was made two days after the submission of the plaintiff's petition for a reduction for the consideration of

the board and without any notice or suggestion of an intention to increase the assessment, and violates the plain provision of the statute prohibiting an increase of an assessment without notice to the owner of the proposal to increase his assessment.''

Appellant seeks to distinguish the above case upon two grounds: (1) that the statute of California prohibits the making of any reductions, except upon a verified written application; and (2) that, under the California law, the board could act only upon evidence adduced. We think the attempted distinctions are distinctions without difference. It makes no difference whether the appearances were made under the statute which requires it as a condition to secure such reduction, or one which permits but does not prohibit, a reduction of values by the board without such application. As to the second ground of distinction, it appears that there is a statute in California, § 3673, Political Code, which provides that the board of supervisors has power, after giving notice in such manner as it may by rule prescribe, to increase or lower the entire assessment roll or any assessment contained therein, and make the assessment conform to the true value of the property in money. The statute itself does not require that the board shall act only upon evidence, but the courts have apparently adopted that rule. *City of Oakland v. Southern Pacific R. Co.*, 131 Cal. 226, 63 Pac. 371. We have adopted a similar rule in this state as to the state board of equalization. *State ex rel. O. R. & N. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7.

We are convinced that the voluntary appearance of respondents before the board to obtain a reduction did not give the board jurisdiction to make an increase in the valuation of the property.

The eighth assignment is that the court erred in striking the first affirmative defense of appellant to

the effect that the taxes paid by respondent in March, May, and November, 1925, were disbursed and spent, long before any demand was made on the county or this action instituted.

The ninth claim is akin to the eighth, alleging that it was error to hold that respondents could recover the amount of the disputed tax paid in March, May and November, 1925, even though the amount of such tax had been entirely spent and disbursed prior to the filing of any claim or the institution of this action.

The tenth claim is also akin to the above, assigning that the court erred in holding appellant liable to respondents for any of the taxes paid by respondents for 1924, except those collected by appellant for its own use.

We see no merit in any of the above contentions. As we have said before, respondents sued the only legal entity which had at that time received the money, acting as an agency of the state. The county cannot shield itself by the fact that the money had been disbursed to the various other taxing districts and the state. *Pearl River Co. v. Lacey Lumber Co.*, 124 Miss. 85, 86 South. 755. It is of no moment that the amount was merely received and proportioned as provided by statute. For that portion illegally disbursed to the state, the law provides for appropriation to reimburse the county; and recovery from the other taxing districts may be had by credits upon funds hereafter coming into its possession.

[7] The eleventh assignment is that it was error to hold that the members of the state tax committee were not necessary parties, to the end that the disputed tax, if void, might be re-assessed.

Under Rem. Comp. Stat., § 11167 [P. C. § 7076], the assessment as made by the tax committee "shall be and constitute the value of the entire property of such rail-

road company within this state, for the levy of taxes thereon, subject to revision and correction by the state board of equalization as hereinafter provided."

See, also, Laws of 1925, Ex. Sess., p. 254, § 44.

If no valid change in the valuation was made by the state equalization board, the valuation fixed by the tax committee remained the valuation. The illegal portion of the assessment can be clearly ascertained, determined, and deducted. It has been segregated and its rebate prayed.

We have held that a county may be held for an invalid school district tax, and the school district was not a necessary party to such action. *Stimson Timber Co. v. Mason County*, 97 Wash. 205, 166 Pac. 251.

The state tax committee was not a necessary or proper party, nor was a re-assessment under the statutes then proper, because the state equalization board could not meet and pass upon it.

[8] The twelfth claim of error is that argued most extensively and which was argued by respondents before any other. It is that the court erred in entering judgment in the sum of $667.51, with interest from the respective dates of payment.

If the amount above specified was an illegal and excessive tax, of course the court did not err in rendering judgment therefor. That respondents had no notice of the proposal to increase the assessed valuation is thoroughly established in this case. That such notice is a jurisdictional prerequisite to the making of any increase, is clearly established in this state. *Lewis v. Bishop*, 19 Wash. 12, 53 Pac. 165; *Everett Water Co. v. Fleming*, 26 Wash. 364, 67 Pac. 82; *Weyerhauser Timber Co. v. Pierce County*, 133 Wash. 355, 233 Pac. 922.

The office of the *Attorney General* was also satisfied on the above proposition, as is shown by letter written by his assistant on December 3, 1924. Why his advice

was not followed is not apparent to us. That it should have been followed is clear. We are thoroughly convinced that the proposed increase in the valuation of respondents' properties was attempted without jurisdiction, and was void. Respondents are therefore entitled to recover the alleged amount of the tax, as was allowed by the lower court.

It is also contended that, in any event, the interest allowed from the date of the payment of the illegal tax under protest is improper, citing authority from other jurisdictions to the effect that interest is never allowed on illegal taxes sought to be recovered after payment. We seem to have settled this question in this state in the case of *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65, where we gave directions to enter judgment in favor of the company against the county for the amount of the illegal tax with legal interest from March 6, 1918, the date on which the railway company was compelled to, and did, pay an excessive and illegal tax.

After having examined and considered all the questions raised in the case, we are convinced that the judgment was right.

Affirmed.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.

## ON REHEARING.

### [*En Banc.* February 7, 1927.]

PER CURIAM.—Upon a reargument of this case *En Banc,* it appears to the court that that portion of the Departmental opinion, wherein reference is made to the rule in the state of California in regard to the production of evidence before the equalization board, and the statement is made that a similar rule obtains in this state, should be stricken for the reason that it was not

necessary to the decision of this case and the court is desirous of leaving this an open question to be determined when squarely presented to it.

In all other respects the opinion as filed is approved.