[No. 11305-8-II. Division Two. August 16, 1989.]

LONGVIEW FIBRE COMPANY, *Respondent,* v. COWLITZ COUNTY, *Appellant.*

C.C. Bridgewater, Jr., Prosecuting Attorney, and David R. Koss, Deputy, for appellant.

James R. Johnston and Bogle & Gates, for respondent.

PETRICH, J.—Cowlitz County appeals a summary judgment requiring it to refund $84,456.45 in taxes plus interest to Longview Fibre Company. This case presents the following issue: When the taxpayer, who pays its property taxes in semiannual installments, deems its taxes, or any part thereof, excessive, must each installment be paid under protest to preserve the right to a refund of the excessive tax? We conclude that each installment must be paid under protest to preserve the right to a complete refund of an overpayment. Therefore, we reverse the Superior Court.

This case arose from a valuation dispute between Cowlitz County and Longview Fibre over the County Assessor's 1980 appraisal of Longview Fibre's paper mill for property taxes payable in 1981. Longview Fibre appealed the property tax assessment to the Cowlitz County Board of Equalization, which upheld the assessment. It then commenced a refund action in superior court. Longview Fibre repeated this process each year from 1980 to 1983. The parties resolved the dispute in 1985 and agreed that Longview Fibre's property had been overvalued by $17 million during each of the years in question. The overvaluation resulted in overpayment of taxes, which in 1981 amounted to $168,912.90.

Longview Fibre paid its taxes in two installments each year, as permitted by RCW 84.56.020.[1] In 1981, Longview

---

[1]The former RCW 84.56.020, in effect when the facts of this case arose, provided in part: "That when the total amount of tax on any lot, block or tract of real property payable by one person is ten dollars or more, and if one-half of such tax be paid on or before the said thirtieth day of April, then the time for payment of the remainder thereof shall be extended and said remainder shall be due and

Fibre's property taxes were $2,544,968.66, of which it paid half on April 30, 1981, and half on October 31, 1981. Pursuant to the protest statute, RCW 84.68.020, Longview Fibre paid the second installment under protest.[2]

When the parties were finalizing the settlement, the County refused to refund more than half of the 1981 overpayment, because of Longview Fibre's failure to protest the first installment of its 1981 taxes. The amount of the refund for taxes paid in 1981 was the only remaining issue. The parties agreed that there was no question of fact and on cross motions for summary judgment the court entered judgment for Longview Fibre in the amount of $84,456.45, half of the 1981 overpayment, plus interest.

■ Statutes that are clear and unambiguous are not subject to judicial construction. *PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 118, 750 P.2d 1240 (1988) (quoting *Roza Irrig. Dist. v. State*, 80 Wn.2d 633, 635, 497 P.2d 166 (1972)). We find neither RCW 84.56.020, which permits taxes to be paid in installments, nor RCW 84.68.020, which provides the means to protest excessive tax, to be ambiguous.

■■ Longview Fibre contends that the protest statute explicitly permits a taxpayer to pay "any part" of its taxes, such as one installment, under protest and thereby become entitled to a refund of any overpayment, up to the amount

___

payable on or before the thirty–first day of October, following after which date such remaining one–half shall become delinquent, and interest at the rate of eight percent per annum shall be charged upon said remainder from the date of delinquency until paid . . ."

[2]RCW 84.68.020 provides in part as follows:

"In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed . . . such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the superior court . . . against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest . . ."

protested. We disagree. The plain language of the statute provides that a taxpayer may pay the tax under protest, meaning the entire tax, or any part thereof *that it deems unlawful,* and then seek to recover the tax so paid under protest.

The approximate 8 percent reduction in valuation resulted in an across–the–board reduction in the 1981 taxes. Viewing the entire 1981 property tax as a unit, as we must, pursuant to *Morf v. Johnston,* 173 Wash. 215, 216, 22 P.2d 663 (1933), we hold that the reduction applies pro rata to each installment. Having paid only half of its 1981 taxes under written protest, Longview Fibre is entitled to only half of its 1981 overpayment. This result is dictated by both the protest statute and the long–standing rule that void taxes voluntarily paid cannot be recovered. *Pacific Fin. Corp. v. Spokane Cy.,* 170 Wash. 101, 102, 15 P.2d 652 (1932).

We find *National Bank of Detroit v. Detroit,* 272 Mich. 610, 262 N.W. 422 (1935) to be persuasive authority. There, the bank paid without protest the first half of its taxes, which were based on an incorrect valuation by assessors. The bank paid the second half of the taxes under protest. Although the bank prevailed on the valuation question, the court held that it was entitled to recover only that portion of overpayment paid under protest. The court relied on the general common law rule, identical to that of Washington's, that "[a] voluntary payment of tax, even though it be void, is a bar to a subsequent recovery." *National Bank of Detroit,* 614–15.

The decision of the Superior Court is reversed.

REED, J. (concurring separately)—I write separately to submit a distinct interpretation of the protest statute. I also acknowledge that a rather aged, but by no means obsolete, opinion of the State Attorney General supports the majority's conclusion. Though the result we reach is consistent with that in *National Bank of Detroit v. Detroit,*

272 Mich. 610, 262 N.W. 422 (1935), that opinion is devoid of any analysis on which we can rely. And while *Morf v. Johnston,* 173 Wash. 215, 22 P.2d 663 (1933) might indirectly support the dissent's position, under my proposed reading of the protest statute, the "or any part thereof deemed unlawful" language, on which the dissent relies, would not apply to Fibre's situation.

The language of the protest statute, quoted in footnote 2, is intended to describe two different types of taxes. First, taxes may be invalid or "unlawful", *e.g.,* beyond the authority of the taxing district, or assessed against exempt property or an exempt taxpayer. Second, taxes may be "excessive", *i.e.,* based upon an overvaluation, as in the present case. The phrase "or any part thereof deemed unlawful" refers to the former category. The language was not intended to create divisible payments or portions of allegedly excessive assessments and therefore provides no solution to the issue posed. Indeed, in most cases of a valuation dispute, as was the case here, the extent to which the tax is excessive cannot be determined until the dispute finally is resolved. We are left, therefore, with the condition that all installments of taxes claimed to be excessive must be paid under protest before refunds will be authorized.

Further, the Attorney General Opinion quoted below directly tackles the issue presented in this case. AGO 234 (1956), responding to a request from the King County Prosecuting Attorney, provides as follows:

TAXES, TAX REFUNDS, PROTEST.

First–half payment of taxes must be made under protest if the taxpayer is to preserve his right to possible refund of such taxes, and an unlawful portion of taxes cannot be deducted from the total amount due the county treasurer, but the entire amount shown must be paid with no deduction or set off of illegal tax still due or already paid.

A short form of protest, referring to and incorporating by reference a comprehensive form already on file with the county treasurer, is valid.

. . . .

You have requested our opinion in answer to the following questions which have arisen because of current litigation questioning the constitutionality of chapter 253, Laws of 1955:

1. If the first half of the [year's] taxes are paid without protest, and thereafter a portion of [the year's] taxes are determined to be invalid, can a taxpayer:

a. who has paid the first half of his taxes without protest, pay the second half of taxes under proper protest of the total invalid amount of both payments and thereby preserve his right to recover the amount protested . . .

. . . .

## Analysis

1. Your first question must be answered in the negative. There is no specific statutory provision pertaining to the factual situation posed by your question nor have we found any applicable court decision. However, general principles controlling tax protests and actions for refund of tax coupled with the provisions of RCW 84.68.020 indicate that if one is fully to preserve his right to refund of a void portion of tax, where he pays in two installments pursuant to RCW 84.56.020, he must make proper protest with each installment.

As stated in 84 C.J.S. 1290

"* * * the statutory requirement is intended not only [to] furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal; and the filing of a protest has two purposes, to serve notice on the government of the dissatisfaction of the taxpayer, and to define the grounds on which the taxpayer stands."

RCW 84.68.020 provides in part:

"In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person whose property is taxed, or from whom the tax is demanded or enforced, such person may pay the tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person so paying, * * * may bring an action in the superior court * * * against the state, county, or municipality by whose officers the tax was collected, to recover it or any portion thereof, so paid under protest. * * *" (Emphasis added)

RCW 84.68.070 makes this the exclusive method to contest the validity of the payment of any tax except with respect to cases

covered by RCW 84.68.010. This section requires that if an action for refund of tax <u>or portion thereof</u> is to be maintained it must be paid under written protest and only if "so paid" may such action be maintained.

Whatever may have been the reason for legislative requirement of protest as a condition to the right to sue for refund of tax, it is apparent that permitting the first half of payment without protest would frustrate the legislative purpose. It is to be noted that this section was enacted by the 1931 legislature at a time when the legislature had already authorized by § 83, chapter 130, Laws of 1925, payment of taxes in two installments. Permitting recovery of taxes paid upon the first installment without protest would clearly defeat one of the purposes for the enactment of the statute as stated in the quotation from C.J.S., since it would then be possible for a taxpayer to not advise the county he was paying under protest until after the levies had been made. *Cf.* RCW 84.56.020 and RCW 84.52.030. The officials responsible for imposing a levy for the tax refund fund, RCW 84.68.040, would thus have no knowledge of the amount of potential refunds facing the district.

Thus, the purpose for requiring a protest as a condition to receiving a refund is to give officials responsible for imposing a levy for the tax refund fund knowledge of the amount of potential refunds facing the local agency. Allowing Fibre to recover taxes paid in the first installment without protest would, therefore, defeat that purpose of the protest statute because the Cowlitz County officials did not have notice of Fibre's dissatisfaction with the tax until payment of the second installment.

Attorney General Opinions, while not controlling, are entitled to considerable weight. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985); *Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 606, 638 P.2d 77 (1981). As the quoted AGO seems to answer directly the issue at hand, I find it to be dispositive. Strictly read, the AGO would suggest an all–or–nothing result; that is, given the purpose for requiring a taxpayer to protest each installment as expressed in the opinion, one who fails to protest the April installment would not be entitled to a refund of *any* invalid or excessive amount, even though the October installment is paid under protest.

Finally, I submit that RCW 84.68.020 is not a "taxing statute," as that term is used in the reported decisions. Accordingly, the dissent's reliance on the proposition that ambiguous "taxing statutes" are construed in favor of the taxpayer is not well placed.

Although the result here is less than equitable, the matter should be addressed to the Legislature. On the other hand, the County in this case has conceded that Fibre is entitled to one–half of the excessive tax. Thus, the judgment should be reversed, but only to the extent requested by the appellant.

ALEXANDER, C.J. (dissenting)—I dissent because I believe that the majority misinterprets RCW 84.68.020. That statute requires a taxpayer who wishes to challenge an assessment to "pay such tax *or any part thereof deemed unlawful,* under . . . protest." (Italics mine.) In cases such as this one, where the taxpayer agrees that the tax is valid but challenges the amount, the statute does not clearly require that the entire tax be protested. The provision cited above could readily be interpreted to mean that the taxpayer must protest only that part of the tax to which he or she objects. This interpretation is logical in light of the holding in *Morf v. Johnston,* 173 Wash. 215, 22 P.2d 663 (1933), cited by the majority. That court held that the taxes on a parcel of property for any one year is a unit and is not discharged until the last dollar owed is paid, whether payable in installments or not. *Morf,* 173 Wash. at 216–17. Under the rule enunciated in that case and the specific language of the statute, it is certainly arguable that the taxpayer has no right to object until the taxpayer is required to pay more than he thinks he or she should. Certainly there is no obvious reason for designating part of a payment as excess before the legal obligation has been satisfied.[3]

---

[3]Of course, if the taxpayer challenges an amount equal to more than half of the tax assessed, he must make the first payment under protest as well.

Neither is such a requirement necessary to serve the purpose of the statute. The purpose of protest under any system of taxation is to give notice that the right to collect the tax is disputed. This is required so that the State may not unwittingly receive payment of a tax to which it has no legal right, and thereby subject itself, against its will, to the costs of an action to recover it back. *Tozer v. Skagit Cy.,* 34 Wash. 147, 151, 75 P. 638 (1904); *see also Ozette R.R. v. Grays Harbor Cy.,* 16 Wn.2d 459, 133 P.2d 983 (1943), *overruled on other grounds in Xerox Corp. v. King Cy.,* 94 Wn.2d 284, 289–90, 617 P.2d 412 (1980), in which only one protest, apparently made after the first half–payment was due, complied with statutory requirements. The court held that the protest was sufficient. Here, the County had notice of the objection to the tax before it had collected any funds to which its right was challenged. The purpose of the requirement was satisfied, and there was no good reason for denying Longview Fibre a refund to which it was equitably entitled.

Finally, whether or not the majority agrees with my interpretation of RCW 84.68.020, it is certainly apparent that more than one interpretation of the statute is reasonable. If there is any doubt as to the meaning of a taxing statute, it must be construed against the taxing power. *Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 254, 684 P.2d 703 (1984); *Shurgard Mini–Storage v. Department of Rev.,* 40 Wn. App. 721, 727, 700 P.2d 1176 (1985). This statute should have been interpreted to apply Longview Fibre's protest to the entire amount of the improper assessment. Therefore, I dissent.

Review granted at 113 Wn.2d 1028 (1989).