[No. 56508–2.   En Banc.   May 3, 1990.]

LONGVIEW FIBRE COMPANY, *Petitioner,* v. COWLITZ COUNTY, *Respondent.*

*Bogle & Gates, James R. Johnston,* and *Gregg D. Barton,* for petitioner.

*C.C. Bridgewater, Prosecuting Attorney,* and *David R. Koss, Chief Civil Deputy,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Joel M. Greene, Assistant,* amici curiae for respondent.

UTTER, J.—Beginning in 1980, Longview Fibre Company disputed the Cowlitz County Assessor's appraisal for tax purposes of Longview Fibre's paper mill. Longview Fibre appealed the assessment to the County Board of Equalization. The Board upheld the assessment. Longview Fibre then appealed to the State Board of Tax Appeals. Longview

Fibre also began a refund action in superior court requesting judgment for the total taxes for the year. This dispute covered the tax years 1981–1984, and each year Longview Fibre repeated this process.

In 1985, Longview Fibre and the County resolved the valuation dispute. The parties agreed that Longview Fibre's property had been overvalued by $17 million. Thus, Longview Fibre overpaid its taxes for the years 1981–1984. The overpayment for the year at issue here, 1981, totaled $168,912.90.

Longview Fibre paid its taxes in two installments each year as authorized by RCW 84.56.020. In 1981, Longview Fibre paid the first installment of $1,272,484.33 without any protest. Longview Fibre paid the second installment of $1,272,484.33 with written protest. For each of the succeeding years, 1982, 1983 and 1984, Longview Fibre paid each installment under protest.

Cowlitz County recognizes that Longview Fibre is entitled to a refund for the overpayment. However, the County refused to refund more than half of the 1981 overpayment because Longview Fibre failed to protest the first installment pursuant to RCW 84.68.020.

The parties entered into a stipulated partial judgment that awarded Longview Fibre the half of the overpayment attributable to the second installment paid under protest. The judgment preserved Longview Fibre's right to present the issue of the first installment to the court.

Both parties moved the superior court for summary judgment. The Cowlitz County Superior Court granted Longview Fibre's motion and entered judgment for $84,456.45 plus interest.

Cowlitz County appealed to the Court of Appeals. The Court of Appeals reversed in a split decision in which each judge wrote separately. *Longview Fibre Co. v. Cowlitz Cy.*, 55 Wn. App. 309, 777 P.2d 556 (1989). We granted Longview Fibre's petition for review. We affirm.

RCW 84.68.020 provides that when a taxpayer deems its property taxes to be "unlawful or excessive", the taxpayer

may pay "such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive", and then the taxpayer may bring an action in superior court "to recover such tax, or any portion thereof, so paid under protest . . .".

Although both parties contend the statute is not ambiguous, the three opinions of the Court of Appeals demonstrate that it is, in fact, ambiguous. The language of the statute does not answer the question of the effect of RCW 84.56.020, allowing payment of taxes in equal installments, on the protest requirement.

The County maintains that taxpayers must protest both semiannual installments to obtain a full refund. Longview Fibre counters that the statute allows protest of part of the taxes and since the total overpayment was less than the second installment, it was not necessary to protest both installments.

We hold that a taxpayer who pays in installments must protest both installments in order to preserve the right to a full refund. This interpretation of the statute fosters administrative uniformity and the statute's purpose of assuring notice to the taxing authority of the protest and the grounds for such protest.

I

The Court of Appeals held that the taxpayer must pay each installment under protest to preserve the right to a complete refund of an overpayment. *Longview Fibre Co. v. Cowlitz Cy., supra.* The opinion, written by Judge Petrich, viewed the year's tax as a unit. *Morf v. Johnston,* 173 Wash. 215, 216, 22 P.2d 663 (1933). Thus, the reduction in taxes applied pro rata to each installment. Judge Petrich concluded that Longview Fibre is entitled to a refund only of the excess attributable to the installment paid under protest. Judge Reed concurred in the result but submitted a different interpretation of the statute.

■ Judge Petrich's interpretation is persuasive. RCW 84.68.020 establishes written protest as a condition precedent to maintenance of a suit for refund. *Odom Co. v. King Cy.,* 78 Wn.2d 505, 507, 477 P.2d 6 (1970); *First Nat'l Bank of Chicago v. King Cy.,* 4 Wn.2d 91, 96, 102 P.2d 263 (1940). Taxes paid without protest are considered voluntarily paid and nonrefundable. *Pacific Fin. Corp. v. Spokane Cy.,* 170 Wash. 101, 102, 15 P.2d 652 (1932); *Peterson v. Jefferson Cy.,* 167 Wash. 269, 273, 9 P.2d 73 (1932) (taxpayer who voluntarily paid on basis of overvaluation could not recover in absence of protest at time of payment).

■ Thus, the protest requirement is a jurisdictional prerequisite. The protest requirement serves to delineate what the court will consider. The terms of the statute limit the taxpayer's refund suit to any amount paid under protest. Accordingly, Longview Fibre was limited in its refund action to half the year's taxes. The other half not protested was not part of the suit. Consequently, even though the entire year's tax was excessive, Longview Fibre can recover only the excess attributable to the taxes paid under protest because they were the only taxes subject to the suit.

The statute allows the taxpayer to protest a tax or any part thereof deemed unlawful. As demonstrated by Longview Fibre's complaint and the resolution of the valuation dispute, the tax for the entire year was excessive, not just half the year's tax. The overvaluation reduced Longview Fibre's taxes for the entire year. It did not reduce just the amount due for the second installment; it reduced each installment commensurately. The installments reflect the excess taxes equally. Accordingly, to obtain a refund for the amount overpaid in each installment, the taxpayer must protest each installment.

When the taxpayer protests only part of the year's taxes, the statute limits the recovery to the excess taxes attributable to that part. Longview Fibre cannot recover the total excess when it protested only part of the excess by protesting only one installment.

Longview Fibre argues, and the dissent at the Court of Appeals agreed, that since the refund is less than the amount protested, it should not have been obligated to protest more than it recovered. When Longview Fibre paid its first installment, it had not yet paid excessive taxes in view of its total tax liability for the year. Only when it paid the second installment did it exceed its proper tax liability.

This is an argument from hindsight. It ignores the fact that the taxpayer could not know the extent to which the property was overvalued until the dispute was resolved. *See Longview Fibre Co. v. Cowlitz Cy.*, 55 Wn. App. at 313 (Reed, J., concurring separately) (in most cases of a valuation dispute the extent to which the tax is excessive cannot be determined until the dispute is finally resolved). It is fortuitous that Longview Fibre protested more than it recovered. Longview Fibre's and the dissent's interpretation would create an *ad hoc* rule that would require taxpayers to guess their proper tax liability prior to resolution of the valuation issue and then protest their taxes based on their estimate. The court would then have to indulge in a case–by–case determination of whether the amount protested is sufficient to cover a conceivable refund just to determine the threshold question of whether the protest was sufficient under the statute and the parties are properly before the court. Requiring protest of both installments clearly establishes the taxpayer's compliance with the protest requirement and establishes without additional factfinding the taxpayer's right to sue for a refund.

## II

■■ The primary purpose of the protest requirement is notice. *Tozer v. Skagit Cy.*, 34 Wash. 147, 151, 75 P. 638 (1904). In interpreting a statute, we must give effect to the intent and purpose of the legislation. *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). Protest gives notice to the taxing authority that the taxpayer is disputing the right to collect the tax and gives

notice as to the grounds upon which the taxpayer is disputing the tax. Longview Fibre argues essentially that since the County had actual notice from the proceedings before the County Board of Equalization, and the failure to protest the first installment did not prejudice the County, Longview Fibre should not be required to protest both installments in order to obtain a full refund. This interpretation would require courts to look at each individual refund suit and determine if actual notice existed or whether there was prejudice to the taxing authority by failure to protest both installments. This would destroy the uniformity of the rule and create needless litigation.

Moreover, actual notice on the part of the County of the taxpayer's claims is irrelevant to the issue of written protest. *First Nat'l Bank of Chicago v. King Cy., supra* at 96.

Protesting the first installment, due in April, provides early notice which aids the County in its fiscal planning and in making decisions concerning potential refund lawsuits. The notice is important not only to the county treasurer but to junior taxing districts such as school and fire districts. These districts receive funds from the County. It is important that they be aware of possible reductions in allocations of tax funds due to potential refunds.

Protest of both installments serves not only to give notice to the taxing authority, but also to protect the taxpayer's rights. Protest preserves the taxpayer's right to assert that it did not pay the tax voluntarily. 72 Am. Jur. 2d *State and Local Taxation* § 1082, at 344 (1974). Without tangible protest, there is no evidence that the taxpayer paid involuntarily, subjecting it to the common law rule that taxes voluntarily paid are not recoverable. *See Pacific Fin. Corp. v. Spokane Cy., supra.*

Two Attorney General Opinions issued in 1956 support our construction of the statute. AGO 233; AGO 234. The Attorney General concluded that in order to preserve the right to a full refund, the taxpayer who pays in two installments must make proper protest with each installment.

This furthers the legislative purpose of notice. AGO 234 (1956), at 2, 3.

The Attorney General said:

[G]eneral principles controlling tax protests and actions for refund of tax coupled with the provisions of RCW 84.68.020 indicate that if one is fully to preserve his right to refund of a void portion of tax, where he pays in two installments pursuant to RCW 84.56.020, he must make proper protest with each installment.

As stated in 84 C.J.S. 1290

"* * * the statutory requirement is intended not only to furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal; and the filing of a protest has two purposes, to serve notice on the government of the dissatisfaction of the taxpayer, and to define the grounds on which the taxpayer stands."

. . .

. . . Permitting recovery of taxes paid upon the first installment without protest would clearly defeat one of the purposes for the enactment of the statute as stated in the quotation from C.J.S., since it would then be possible for a taxpayer to not advise the county he was paying under protest until after the levies had been made. . . . The officials responsible for imposing a levy for the tax refund fund, RCW 84.68.040, would thus have no knowledge of the amount of potential refunds facing the district.

AGO 234 (1956), at 2, 3.

■ The opinion of the Attorney General is bolstered by the fact that after the issuance of AGO 233 and AGO 234, the Legislature reenacted RCW 84.68.020 without change. Reenactment of a statute without material change after it has been construed in an Attorney General Opinion implies acquiescence by the Legislature of such construction. *Washington Educ. Ass'n v. Smith,* 96 Wn.2d 601, 606, 638 P.2d 77 (1981).

The need for a bright–line rule susceptible to easy, uniform application mandates the construction of the statute proffered by the County. A bright–line rule is more efficient and would make it easier for the taxpayer to know what is expected of him or her in order to maintain a suit for refund.

We must interpret the provision in the manner calculated to best accomplish the statutory purpose. Regardless of other types of notice to the taxing authority, such as administrative proceedings, the statute's purpose of formal notice that the taxpayer may seek a refund is best served by the protest of both installments when the entire year's tax is deemed excessive or unlawful. Protest of only one installment entitles the taxing authority to assume that the taxpayer expects to recover only the excessive or unlawful taxes attributable to the protested installment. "In choosing between alternative statutory interpretations, the court should adopt that interpretation which best fosters the presumed legislative purpose." *State v. Demos,* 94 Wn.2d 733, 739, 619 P.2d 968 (1980). Clearly the purpose of notice is best served by protesting both installments so notice is given as early as possible and it is clear to the taxing authority what the taxpayer is contesting. If the taxpayer protests only one installment, then he or she can recover only the excess attributable to the installment so protested.

■ While the result we reach today is harsh because Longview Fibre would be entitled to a refund but for its failure to comply with the formal requirements of the protest statute, we will not give relief on equitable grounds in contravention of a statutory requirement. *Department of Labor & Indus. v. Dillon,* 28 Wn. App. 853, 855, 626 P.2d 1004 (1981) (equitable principles cannot be asserted to establish equitable relief in derogation of statutory mandates).

Longview Fibre charges that the protest requirement is obsolete and should be abrogated. Concerns over the efficacy of the statute are properly addressed to the Legislature.

The Court of Appeals is affirmed and we hold that taxpayers must protest both installments to preserve the right to recover a full refund.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.