49 P.3d 142 (2002)
112 Wash.App. 354
HOLBROOK, INC., a Washington Corporation, Appellant,
v.
CLARK COUNTY, Washington, a Municipal Subdivision of the State of Washington, Respondent.
No. 27216-4-II.
Court of Appeals of Washington, Division 2.
June 28, 2002.
*144 Jessica Wairimu Dimitrov, Vancouver, for Appellant.
Richard Steven Lowry, Clark County Deputy Prosecuting Attorney, for Respondent.
Timothy Dunning Ford, Olympia, for Amicus Curiae Building Industry Association of Washington.
*143 QUINN-BRINTNALL, A.C.J.
Holbrook, Inc. appeals from a judgment denying it relief in an action challenging Clark County's designation of Holbrook's property as forest resource land under the Growth Management Act (GMA). At issue is whether the County gave Holbrook adequate constitutional and statutory notice of its action.[1] Holding that no statute, regulation, or constitutional principle required Clark County to individually notify non-resident landowners of the GMA process, we affirm.

FACTS
The parties stipulated to the following facts below. Holbrook is a Washington corporation with a principal place of business in Olympia. In 1993, Holbrook purchased 75 acres of forested land east of Battle Ground in Clark County, Washington. At the time, the property was zoned rural estate, which allowed residential lots of at least five acres. Holbrook bought the property intending to log it and then to subdivide it into five-acre lots for development. Under County ordinances then in effect, Holbrook could have divided the property into five-acre parcels *145 without further County approval.[2] In accordance with its plans, Holbrook logged the land in August 1995.
At the time of the Holbrook purchase, the County was in the process of developing its comprehensive plan under the GMA. Under the GMA, the County had to designate natural resource lands, including forest resource lands that have long-term significance for the commercial production of timber. RCW 36.70A.060, .170. By the time Holbrook bought the property, County staff had drafted a community framework plan that proposed that Holbrook's property and surrounding properties be designated as rural or forest resource land. The plan was area wide rather than site specific. It was submitted to the planning commission and then to the Board of County Commissioners in April 1993. Before it formally considered the plan, the Board, in April 1993, adopted an emergency ordinance requiring County review of any large lot (5-to-20 acre) land divisions. Many property owners who learned of these developments were able to divide their lands into five-acre parcels before the emergency ordinance was enacted, but Holbrook was not aware of the County ordinance, so its property remained largely undivided. Nor was Holbrook aware of the Board's May 1993 meeting, when the Board adopted the community framework plan.
After the County issued a proposed comprehensive plan, it held numerous public meetings, including three that were devoted specifically to proposed natural resource lands designations. At these meetings, several property owners succeeded in having their properties removed from resource designation.
Finally, in December 1994, the County adopted a final comprehensive plan (effective January 1, 1995), designating 55 acres of Holbrook's property as forest resource land, specifically Forest Tier II, which allows only one residential lot per 40 acres.
Throughout these proceedings, the County did not give Holbrook individual notice of its actions. The County employed numerous methods of outreach and notice, including mailings, newsletters, news releases, a telephone hotline, a speaker's bureau, public workshops, fairs and open houses, and print and television advertisements, all in addition to legal notices in newspapers. Mailed notices and newsletters were sent to all Clark County residents, and legal notices were placed in the local newspapers. The County did not attempt to specifically notify Holbrook about the GMA process, although it had Holbrook's Olympia address from assessor's records.
In October 1995, Holbrook learned that most of its land had been designated forest resource. During the 1996 annual review of the comprehensive plan, Holbrook sought to amend the plan to re-designate its property as rural estate. The Board denied Holbrook's request.
As a result, Holbrook sued the County for declaratory relief and damages under 42 U.S.C. § 1983, claiming that the County violated its statutory and constitutional rights by down-zoning its property without adequate notice. The trial court bifurcated liability from damages and, based on the stipulated facts, ruled that Holbrook was not denied of constitutionally or statutorily required notice nor denied equal protection of the laws. Holbrook sought review directly to the Supreme Court, which transferred the case to this court.

ANALYSIS
Holbrook claims that the County was required to provide him with individual notice under statutory, regulatory, and constitutional equal protection and due process requirements. We address each in turn. Because this appeal involves questions of law, this court's review is de novo. See Washam v. Sonntag, 74 Wash.App. 504, 507, 874 P.2d 188 (1994).

*146 STATUTORY/REGULATORY NOTICE REQUIREMENTS
Holbrook asserts that the regulations guiding the designation of natural resource lands under the GMA require individual notice to landowners. Specifically, Holbrook cites WAC 365-190-040, which states that public participation in the designation process "should include at a minimum: Landowners" (among others[3]) and that "[t]he public participation program should include early and timely public notice of pending designations and regulations." WAC 365-190-040(2)(a)(i) (emphasis added).
Nothing in this regulation requires that landowners be given individual notice of designation proceedings. The regulation suggests giving public notice and specifies means of notice and participation such as advisory committees, press releases, news conferences, neighborhood meetings, paid advertising, newsletters, "and other means beyond the required normal legal advertising and public notices." WAC 365-190-040(2)(a)(ii). But all of these suggested methods involve broad-based public notice procedures, not individual notice to individual landowners.
Likewise, RCW 36.70A.140 provides for public participation with the goal of "broad dissemination of proposals and alternatives, opportunity for written comments, public meetings after effective notice, provision for open discussion, communication programs, information services, and consideration of and response to public comments." RCW 36.70A.140.
Again, as with WAC 365-190.040(2)(a)(ii), individual notice is not required under RCW 36.70A.140; rather the County was required only to provide the public with "effective notice."
Holbrook argues that the GMA was amended in 1997 to require greater notice to individual landowners, with the passage of RCW 36.70A.035.[4] Holbrook claims the passage *147 of this statute supports its argument that the legislature must have intended individual notice because "[r]eenactment of a [statute] without material change after it has been construed by an authority entrusted with its interpretation implies acquiescence by the Legislature to the construction given the statute." Br. of Appellant at 26 (citing Longview Fibre Co. v. Cowlitz County, 114 Wash.2d 691, 698, 790 P.2d 149 (1990)). While this statement of the law is correct, it does not help Holbrook's argument. The minimum GMA guidelines have been upheld as mandatory by various decisions, but Holbrook does not explain and it is not readily apparent which interpretations of the above-discussed statutes the legislature tacitly approved with the passage of RCW 36.70A.035.
RCW 36.70A.035 does not expressly require individual notice, but it does require "notice procedures that are reasonably calculated to provide notice to property owners...." It includes as examples (1) posting the property for site-specific proposals; and (2) notifying public or private groups with known interest in a certain proposal or in the type of proposal being considered. RCW 36.70A.035(1)(a) and (c). While the notice suggestions are presented in the statute as examples of the "reasonable notice" required to be given to property owners, the methods are not expressly required by the statute. Conspicuous by its absence is any requirement of personal notice to property owners. Moreover, the effect of RCW 36.70A.035 is limited because the statute is expressly prospective and does not apply to comprehensive plans such as Clark County's that were adopted before July 27, 1997. RCW 36.70A.035(3).
According to a 1992 Attorney General Opinion (AGO), neither the GMA nor the planning enabling statutes require individual notice to every landowner whose property may be affected negatively by the adoption of a comprehensive plan or development regulations:
Because of the broad nature of this inquiry and the numerous statutes which arguably relate to comprehensive planning and development regulations, we cannot categorically state that no provisions exist which require individual notice.... [H]owever, we reviewed the statutes specifically addressing the area of comprehensive planning by cities and counties and found no section requiring individual notice.
1992 Op. Att'y Gen. No. 23, at 9.
Although not controlling, we give Attorney General opinions "considerable weight." Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 63, 847 P.2d 440 (1993) (quoting Everett Concrete Prods., Inc. v. Dep't of Labor & Indus., 109 Wash.2d 819, 828, 748 P.2d 1112 (1988)). Moreover, the AGO constitutes notice to the legislature of the department's interpretation of the law, and greater weight attaches to an agency interpretation when the legislature acquiesces in that interpretation. Bowles, 121 Wash.2d at 63-64, 847 P.2d 440. As noted above, even with the passage of RCW 36.70A.035 in 1997, the GMA still does not expressly require individual notice.
Holbrook points out that the AGO addressed only the GMA's requirements, not necessarily the minimum guidelines under chapter 365-190 WAC. But WAC 365-190-040 does not require any greater notice than does the statute. It provides that landowners should be given notice and suggests the county employ advisory committees, press releases, news conferences, neighborhood meetings, paid advertising, newsletters, "and other means beyond the required normal legal advertising and public notices." WAC 365-190-040(2)(a)(ii). Amicus, Building Industry Association of Washington, argues that this is not an exhaustive list, and that the following language from WAC 365-190-040(2)(g) creates a requirement for individual notice: "Land use designations must provide landowners and public service providers with the information necessary to make decisions." Br. of Amicus at 15 (emphasis added in brief). But that landowners must be given notice does not necessarily support Holbrook's argument that such notice must be individual notice. And while the WAC section does not purport to give an exclusive list of notice methods, it is too large a leap to infer a requirement of individual notice from the examples of general public notice provided.
*148 No statute or regulation cited gives Holbrook a right to individual notice of the designation of its property as forest resource land under the GMA.
DUE PROCESS NOTICE REQUIREMENTS
Holbrook argues that even if state statutes and regulations do not require individual notification, the privileges and immunities clause under article I, section 12 of our State constitution and federal constitutional due process provisions under the Fourteenth Amendment do. In addition to the notices and newsletters, the County mailed legal notices to every Clark County resident and provided news releases, a telephone hotline, a speaker's bureau, public workshops, fairs and open houses, and print and television advertisements. The telephone hotline, speaker's bureau, workshops, fairs, and open houses were methods of general notice that provided opportunities to learn more about the process.
Holbrook cites Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to explain the inadequacy of notice only by publication, observing that it is unrealistic nowadays to presume that legal publications will provide actual notice to non-local parties:
Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests. We have before indicated in reference to notice by publication that, "Great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact."
Mullane, 339 U.S. at 320, 70 S.Ct. 652 (quoting McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (1917)).
But Mullane involved judicial settlement of a trust account and is inapposite to this quasi-legislative context. The question of what notice Holbrook was due constitutionally depends on whether the County's actions were legislative or quasi-judicial in nature. The trial court ruled that area-wide zoning and comprehensive plan amendments are generally legislative actions (citing Jones v. King County, 74 Wash.App. 467, 874 P.2d 853 (1994)). Constitutional due process rights do not attach to purely legislative acts. See Earle M. Jorgensen Co. v. City of Seattle, 99 Wash.2d 861, 865-67, 665 P.2d 1328, cert. denied, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 359 (1983) (analyzing amount of participation by electric customers required in the setting of electric rates). But see Harris v. County of Riverside, 904 F.2d 497, 501-02 (9th Cir.1990) (rejecting a strict legislative versus adjudicative analysis in favor of a determination of "whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned.") (quoting Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915)). When the challenge is to a legislative enactment, the legislative process provides all the process that is due. In re Pers. Restraint of Metcalf, 92 Wash.App. 165, 176, 963 P.2d 911 (1998), cert. denied, 527 U.S. 1041, 119 S.Ct. 2405, 144 L.Ed.2d 803 (1999).
No bright line separates judicial from legislative actions. Raynes v. City of Leavenworth, 118 Wash.2d 237, 243, 821 P.2d 1204 (1992). But area-wide actions, such as the adoption of comprehensive plans and zoning ordinances, involving the exercise of the legislative body's policy-making role, are generally considered legislative. See Raynes, 118 Wash.2d at 245-49, 821 P.2d 1204; Jones, 74 Wash.App. at 474-75, 874 P.2d 853; see also RCW 42.36.010 (providing that for purposes of appearance of fairness doctrine, quasi-judicial actions do not include legislative actions adopting, amending, or revising comprehensive plans or adopting area-wide zoning ordinances or amendments of area-wide significance). And such actions are not made quasi-judicial simply because they affect specific individuals, even if the method chosen by the legislative body to acquire input from property owners allows the owners to specifically discuss their own properties. Raynes, 118 Wash.2d at 248-49, 821 P.2d 1204; Jones, 74 Wash.App. at 475, 874 P.2d 853. The determining factor is whether the decision is a policy-making one: "Although legislative decisions may appear adjudicatory *149 when groups focus on how the particular decisions will affect their individual rights, all policy decisions begin with the consideration and balancing of individual rights." Raynes, 118 Wash.2d at 249, 821 P.2d 1204.
As Holbrook points out, there are circumstances in which even legislative decisions can give rise to individual constitutional due process protections. When one person, or relatively few people, are exceptionally affected by a decision on individual grounds, then such persons may be entitled to basic due process rights, including individual notice. For example, in Harris, the court held that a property owner was entitled to individual notice of a hearing on the adoption of a comprehensive plan amendment because, during the amendment process, the owner's land had been specifically targeted for a zoning change. 904 F.2d at 502. The Sixth Circuit held to similar effect in Nasierowski Bros. Inv. Co. v. City of Sterling Heights, 949 F.2d 890, 895-96 (6th Cir.1991).
But the reasoning of those decisions does not apply here. In Harris, after notice of the plan amendment had already been published, the owner's land was specifically targeted for a change to residential zone, evidently for the express purpose of preventing the owner's use of the property for an all-terrain vehicle rental business. 904 F.2d at 498, 502. Similarly, in Nasierowski Bros., a council member, for personal reasons, moved to amend a recommended zoning map to reclassify a strip of land that included approximately 15 separate parcels, but the amendment "was patently calculated to inflict a disproportionately detrimental injury upon only one landowner...." 949 F.2d at 896.
There is no dispute that Clark County's comprehensive plan, by classifying 55 acres of Holbrook's property as forest resource, significantly affected Holbrook's ability to make use of its land. One of the stipulated facts is that, at 55 acres, Holbrook's land cannot support a commercially viable forest. But there is no evidence in the stipulated record that Holbrook's land was specifically targeted in the same manner as in the cases discussed above, nor that the impact on Holbrook was unique or significantly greater than that imposed on most other landowners. And, indeed, the parties stipulate that the designation "was premised upon area-wide analysis, rather than parcel-specific analysis ...." Clerk's Papers at 27. We hold that adequate due process did not require that Holbrook receive individual notice.
EQUAL PROTECTION
Holbrook argues that Clark County's decision to send newsletters and other public notices only to residents of the County deprived it of equal protection of the laws. It is a stipulated fact that the County knew there were non-resident property owners, and that it specifically knew of Holbrook's ownership status and address through the assessor's records. Further, the parties stipulated that at one point the County decided to stop sending growth management newsletters to all County households and instead send them to property owners listed in the assessor's records and to persons asking to remain on the mailing list, but for unknown reasons, the County did not implement this decision. Holbrook argues that the County identifies no rational basis for sending newsletters and public notices to resident owners but not to non-resident owners, and thus it deprived non-resident owners of equal protection. In rejecting this argument, the trial court "agree[d] with the [County] that the scope of the notice is not a `law' granting equal privileges to all citizens within the Washington and U.S. Constitutions." Clerk's Papers at 267.
This is incorrect. The Fourteenth Amendment does not merely prohibit the enactment of "laws" that unjustifiably treat persons unequally, but generally prohibits the state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Although Washington's constitution prohibits the passage of "laws" that grant to any class of citizens privileges and immunities not granted equally to all, WASH. CONST. art. I, § 12, this clause has consistently been construed substantially identically with the Fourteenth Amendment. Equitable Shipyards, *150 Inc. v. State, 93 Wash.2d 465, 476, 611 P.2d 396 (1980). The administration of an otherwise valid law can result in an equal protection violation if the law is administered in a way that unjustly discriminates against similarly situated persons. Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 811, 756 P.2d 736 (1988) (citing Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). Holbrook essentially argues that the County unlawfully administered the public participation requirements of the GMA by unjustifiably failing to give equal notice of participation opportunities to affected landowners based solely on their non-residency.
Under the equal protection clause, persons similarly situated with respect to the law must receive similar treatment.[5]State v. Blilie, 132 Wash.2d 484, 493, 939 P.2d 691 (1997). The first step in conducting any equal protection analysis is determining the appropriate standard of review. Tunstall v. Bergeson, 141 Wash.2d 201, 225, 5 P.3d 691 (2000), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). To apply strict scrutiny, we must first find that a fundamental right is being infringed or a suspect class is involved. Tunstall, 141 Wash.2d at 225, 5 P.3d 691. We do not find that to be the case here. In the absence of infringement of a fundamental right or involvement of a suspect class, rational basis review applies. Tunstall, 141 Wash.2d at 226, 5 P.3d 691. See also Thurston County Rental Owners Ass'n v. Thurston County, 85 Wash.App. 171, 185, 931 P.2d 208, review denied, 132 Wash.2d 1010, 940 P.2d 655 (1997) (explaining that the rational basis or minimal scrutiny test generally applies to zoning, planning, and building regulations).
Under the rational basis test, the court next must determine (1) whether the governmental action applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legislation. Convention Ctr. Coalition v. City of Seattle, 107 Wash.2d 370, 378-79, 730 P.2d 636 (1986).
Although Holbrook's counsel adamantly urges us to define the classes here as resident and non-resident landowners of Clark County, individual notice was not conditioned on property ownership. Clark County designated the class receiving individual notice as residents of Clark County, regardless of whether they owned land. Because the proceedings were part of the County's GMA planning process, there is a clear rational basis for the difference in treatment between County residents and non-residents.
The equal protection clauses of our state and federal constitutions, prohibiting special privileges and immunities and guaranteeing equal protection of the laws, require that class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within, and those without, a designated class. Clark v. Dwyer, 56 Wash.2d 425, 435, 353 P.2d 941 (1960), cert. denied, 364 U.S. 932, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961). Equal protection does not mean that all persons must be treated alike; rather, it means that persons in the same class must be treated alike and that reasonable grounds exist for making a distinction between those within and those without the class. Moran v. State, 88 Wash.2d 867, 874, 568 P.2d 758 (1977). Equal protection does not require "identity of treatment." Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1954). Under the GMA, the relevant class was all County residents, not just landowners, and it was rational to distinguish residents living in the County doing the planning from landowners residing in other counties.
*151 In this case, the County treated all residents of Clark County as a class.[6] Considering that the land designation process under the GMA was a county-by-county undertaking, we hold that rational basis supports Clark County informing only its residents of the proceedings. There was no equal protection violation.
ATTORNEY FEES
Holbrook requests attorney fees under the fee provision of 42 U.S.C. §§ 1983 and 1988. It is not the prevailing party and is not entitled to fees.
No statute, regulation, or constitutional provision required Clark County to individually notify non-resident landowners of its GMA process. We affirm.
We concur: MORGAN and BRIDGEWATER, JJ.
NOTES
[1] Building Industry Association of Washington submitted an amicus curiae brief in support of Holbrook's constitutional and statutory claims.
[2] In 1993, two months after Holbrook purchased this property, the County enacted two emergency ordinances, one of which repealed the exemption from plat review of large (5-to-20 acre) lot land divisions. This court upheld the ordinance in Matson v. Clark County Bd. of Comm'rs, 79 Wash. App. 641, 904 P.2d 317 (1995).
[3] Other participants who should be minimally involved include: representatives of agriculture, forestry, mining, business, environmental, and community groups; tribal governments; representatives of adjacent counties and cities; and state agencies. WAC 365-190-040(2)(a)(i).
[4] RCW 36.70a.035 provides as follows:

(1) The public participation requirements of this chapter shall include notice procedures that are reasonably calculated to provide notice to property owners and other affected and interested individuals, tribes, government agencies, businesses, school districts, and organizations of proposed amendments to comprehensive plans and development regulation. Examples of reasonable notice provisions include:
(a) Posting the property for site-specific proposals;
(b) Publishing notice in a newspaper of general circulation in the county, city, or general area where the proposal is located or that will be affected by the proposal;
(c) Notifying public or private groups with known interest in a certain proposal or in the type of proposal being considered;
(d) Placing notices in appropriate regional, neighborhood, ethnic, or trade journals; and
(e) Publishing notice in agency newsletters or sending notice to agency mailing lists, including general lists or lists for specific proposals or subject areas.
(2)(a) Except as otherwise provided in (b) of this subsection, if the legislative body for a county or city chooses to consider a change to an amendment to a comprehensive plan or development regulation, and the change is proposed after the opportunity for review and comment has passed under the county's or city's procedures, an opportunity for review and comment on the proposed change shall be provided before the local legislative body votes on the proposed change.
(b) An additional opportunity for public review and comment is not required under (a) of this subsection if:
(i) An environmental impact statement has been prepared under chapter 43.21C RCW for the pending resolution or ordinance and the proposed change is within the range of alternatives considered in the environmental impact statement;
(ii) The proposed change is within the scope of the alternatives available for public comment;
(iii) The proposed change only corrects typographical errors, corrects cross-references, makes address or name changes, or clarifies language of a proposed ordinance or resolution without changing its effect;
(iv) The proposed change is to a resolution or ordinance making a capital budget decision as provided in RCW 36.70A.120; or
(v) The proposed change is to a resolution or ordinance enacting a moratorium or interim control adopted under RCW 36.70A.390.
(3) This section is prospective in effect and does not apply to a comprehensive plan, development regulation, or amendment adopted before July 27, 1997.
[5] Under Washington constitution's privileges and immunities clause, corporations are expressly given equal protection. WASH. CONST. art. I, § 12. And the Supreme Court of the United States has held that a corporation is a person within the contemplation of the federal constitution. Grosjean v. Am. Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Santa Clara County v. S. Pac. R.R. Co., 118 U.S. 394, 396, 6 S.Ct. 1132, 30 L.Ed. 118 (1886).
[6] At one point during the GMA process, the newsletter informed County residentswho were all then getting the newsletterthat future notices would only go to landowners and those non-landowners who expressed an interest to continue receiving the newsletters. The County did not put this plan into motion. The effect of dropping that plan was to define the class receiving notice as residents of Clark County.