[No. 71557-2. En Banc.]
Argued May 9, 2002. Decided August 8, 2002.

REGIONAL DISPOSAL COMPANY, ET AL., *Respondents*, v. THE CITY OF CENTRALIA, *Appellant*.

70

*Shannon M. Murphy, Assistant City Attorney,* and *Michael P. Ruark* (of *Inslee, Best, Doezie & Ryder, P.S.*), for appellant.

*Joseph B. Genster* and *David E. Myre, Jr.* (of *Hillis Clark Martin & Peterson, P.S.*); *David W. Wiley* and *Dana A. Ferestien* (of *Williams Kastner & Gibbs, L.L.P.*); and *Edward G. Holm, Prosecuting Attorney for Thurston County,* and *Mark Calkins, Deputy,* for respondents.

OWENS, J. — The City of Centralia imposes a utility tax on the transfer of solid waste from trucks to trains. Regional Disposal Company, which ships garbage through Centralia under a contract with Thurston County, sued to enjoin the tax. The superior court did, and Centralia appeals. The issues we address are whether this tax "discriminates against a rail carrier" in violation of the Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act), 49 U.S.C. § 11501(b)(4) (Supp. V 1999), and, if so, whether the injunction was proper. We affirm.

## FACTS

Regional Disposal contracts with Thurston County to dispose of the county's garbage. The trash is collected at the county's transfer station in Lacey and placed into covered cargo containers. Regional Disposal employs a subcontractor, Harold LeMay Enterprises, Inc. (LeMay), to truck the containers from Lacey to a rail yard in Centralia. At the Centralia rail yard, LeMay employees use a "container pick" to load the containers from the trucks onto railroad cars. Clerk's Papers (CP) at 15. The railroad then transports them to a landfill in Roosevelt, Washington. Thurston County pays Regional Disposal about 40 dollars per ton for

transporting the garbage and depositing it in the landfill. The figure is not broken down for different legs of the journey, but the parties estimate less than one dollar per ton is attributable to the cost of transferring the containers from trucks to trains in Centralia. Regional Disposal has similar arrangements with Lewis, Mason, and Grays Harbor Counties. About 200,000 tons of garbage pass through Centralia every year.

Centralia Ordinance 2068 was enacted in March 2001. *See* Centralia Municipal Code 5.72.020, .050, .055. The ordinance imposes

> [u]pon every person engaged in or carrying on the business of solid waste intermodal transfer service a fee or tax equal to eight percent of the total gross income from such business in the city.

CP at 242. The ordinance defines "[s]olid waste intermodal transfer service" as "the providing by any person of service consisting of the transfer of solid waste generated in or outside of the city from one mode of transportation to another." CP at 241. According to the preamble of the ordinance, the purpose of the tax is to pay for "planning, roadwork, and other costs" Centralia expects to incur to address the impacts of the garbage trucking. CP at 240. The preamble describes complaints about "noise, smell, and weight impacts . . . on City streets, particularly through residential neighborhoods." *Id.* A memorandum authored by the city manager summarizes the complaints and concludes that a new access to the rail yard has to be built. CP at 383-84.

Other industrial trucks in Centralia use the same streets as LeMay trucks. There is evidence that two lumber processing facilities and a fly ash/cement plant generate commercial traffic. There are also trucks hauling garbage to the Lewis County transfer station located in Centralia. But because the ordinance excludes from the definition of "solid waste intermodal transfer service" any "transfers in connection with solid waste treatment, utilization or process-

ing at any interim solid waste handling site," these trucks are not subject to the tax. CP at 241. The only activity subject to the tax is the transfer made by LeMay employees at the rail yard.

On April 10, 2001, Regional Disposal filed a complaint in Lewis County Superior Court seeking a declaratory judgment that the tax was unlawful and an injunction. Actions filed by Thurston County and LeMay were later consolidated. On May 18, 2001, the superior court entered a preliminary injunction against Centralia. Then, on August 6, 2001, based on stipulated facts, the superior court permanently enjoined Centralia from collecting the tax. The superior court found Centralia's tax unlawful for several reasons, including because it violated the 4-R Act. Centralia takes direct appeal.

## ISSUES

(1) Does Centralia's tax discriminate against a railroad in violation of the 4-R Act?

(2) Is injunctive relief appropriate?

## ANALYSIS

### (1)

 The 4-R Act was meant to " 'restore the financial stability of the railway system of the United States.' " *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 336, 114 S. Ct. 843, 127 L. Ed. 2d 165 (1994) (quoting Pub. L. No. 94-210, § 101(a), 90 Stat. 33). Congress found railroads to be " 'easy prey for State and local tax assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality.' " *Id.* (quoting *W. Air Lines v. Bd. of Equalization of S.D.*, 480 U.S. 123, 131, 107 S. Ct. 1038, 94 L. Ed. 2d 112 (1987)). The 4-R Act forbids the states from taxing railroad property at higher rates than other commercial and industrial prop-

erty. At issue is the 4-R Act's catchall prohibition against any other discriminatory tax:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> . . . .
>
> (4) Impose another tax that discriminates against a rail carrier providing transportation . . . .

49 U.S.C. § 11501(b)(4) (Supp. V 1999). Subsection (b)(4) does not reach discriminatory property taxes. *ACF Indus.*, 510 U.S. at 343. However, the federal circuits have construed it, consistently with its broad language, to reach any other discriminatory state taxes. *Atchison, Topeka & Santa Fe Ry. v. Arizona*, 78 F.3d 438, 441 (9th Cir. 1996) (citing authorities). We do too.

A tax is discriminatory under subsection (b)(4) if it imposes a heavier burden on a railroad than on "all other commercial and industrial taxpayers." *Id*. This is the proper comparison class because "[t]he only simple way to prevent tax discrimination against the railroads is to tie their tax fate to the fate of a large and local group of taxpayers." *Kansas City S. Ry. v. McNamara*, 817 F.2d 368, 375 (5th Cir. 1987). Regional Disposal and LeMay contend that Centralia's tax is discriminatory because it singles out for taxation an activity performed only in railroading.

 In *Burlington Northern Railroad v. City of Superior*, 932 F.2d 1185, 1187-88 (7th Cir. 1991), the court held that a tax on an activity performed only in railroading is per se discriminatory. The City of Superior, Wisconsin (Superior), imposed a tax on operators of iron ore concentrates docks. Burlington Northern Railroad operated the only three such docks in Superior, which were the only three in the state. The docks jutted out into Lake Superior and the railroad used them to load iron ore concentrates from trains into barges. The Seventh Circuit held that the tax was discriminatory because it was imposed "on an activity in

which, in Wisconsin anyway, only railroads engage." *Id.* at 1188. Superior was not allowed to present evidence that Wisconsin's tax scheme as a whole was not discriminatory. *Id.* Because Congress wished to avoid "the thicket of incidence analysis," the court said, the 4-R Act confined the state "to taxing railroads as members of larger taxpayer groups." *Id.*

Centralia's tax is discriminatory under *Burlington Northern*. It taxes an activity performed only in railroading. Judge Posner gave a list of examples of such activities:

> It could be a tax on operating rail crossing signals, on selling railroad passenger tickets, on loading tank cars, *on hoisting containers from flat cars onto flatbed trucks*—or on placing iron ore concentrates shipped by rail on wharves for further shipment, a form of unloading.

*Id.* at 1187 (emphasis added). A tax on any of these activities would discriminate against rail carriers because it would impose a burden on railroading not imposed on any other commercial and industrial activities. Centralia's tax raises the cost of getting on the railroad. It burdens only railroading and is therefore discriminatory.

Centralia argues that "the railroad does not use the transfer service and does not pay for it." Appellant's Br. at 12. But it does not matter that the railroad is not the taxpayer. *Burlington Northern* dealt with this issue too. There was a fourth dock in Superior used for loading coal from trains into barges instead of iron ore concentrates. Although this dock served the same purpose as the three iron ore concentrates docks, except with different cargo, it was not operated by the railroad. The coal dock was obviously not subject to Superior's tax on iron ore concentrates docks, but it was subject to a similar tax. Based on this evidence Superior argued that its tax did not discriminate against the railroad, since anybody might operate the docks and have to pay the tax. The court disagreed:

> Who conducts the activity that is taxed is irrelevant. The tax will increase the cost of the activity, to the railroad's detriment.

The statute applies to taxes on rail transportation property and to other taxes if they discriminate against rail carriers; it thus is not limited to cases in which the railroad is the taxpayer.

*Burlington Northern*, 932 F.2d at 1186. Other cases also suggest that discriminatory effect takes precedence over who the taxpayer is. *See Trailer Train Co. v. State Bd. of Equalization of N.D.*, 710 F.2d 468, 471 (8th Cir. 1983); *Union Carbide Corp. v. Bd. of Tax Comm'rs of Ind.*, 69 F.3d 1356, 1357 (7th Cir. 1995). Centralia's tax presents exactly the hypothetical advanced in *Burlington Northern* and rejected by the court: LeMay performs the transfer instead of the railroad. The difference is as between a tax on *selling* tickets and a tax on *buying* them. The economic impact on the activity is the same. We hold that Centralia's tax on "solid waste intermodal transfer service" violates 49 U.S.C. § 11501(b)(4).

Centralia's reliance on *Franks & Son v. State*, 136 Wn.2d 737, 966 P.2d 1232 (1998), is no help. That case related to the state's power to regulate common carriers in interstate commerce. The court held that a regulatory fee imposed on truck common carriers was neither an unreasonable burden on interstate commerce nor preempted by federal law. *Id.* at 758. *Franks* is unrelated to the present case. First, it involved a regulatory fee, not a tax. *Id.* at 749-50. Second, Congress has already determined that taxes that discriminate against railroads unreasonably burden interstate commerce. The only issue here is whether Centralia's tax in fact discriminates against a railroad within the meaning of the 4-R Act.

(2)

Centralia asserts that even if the tax is unlawful, RCW 84.68.010 bars injunctive relief in this case. Chapter 84.68 RCW creates an exclusive procedure for taxpayers to challenge property taxes. RCW 84.68.010 says, "[i]njunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, . . . ex-

cept in the following cases." Instead, the taxpayer may pay under protest and sue for recovery under RCW 84.68.020.

"[I]njunctive relief will not be granted where there is a plain, complete, speedy and adequate remedy at law." *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 791, 638 P.2d 1213 (1982). Therefore, where there is a statutory remedy for a taxpayer, courts will respect anti-injunction provisions despite harsh consequences. *Id.* at 789; *Longview Fibre Co. v. Cowlitz County*, 114 Wn.2d 691, 699, 790 P.2d 149 (1990).

■■ Neither the protest procedure nor the anti-injunction provision of chapter 84.68 RCW applies here. Centralia relies on the words "any tax" in RCW 84.68.010 to argue that it applies. However, RCW 84.04.100 defines "tax" for purposes of Title 84 RCW as "the imposing of burdens upon property in proportion to the value thereof, for the purpose of raising revenue for public purposes." Legislative definitions are controlling. *City of Seattle v. Shepherd*, 93 Wn.2d 861, 866, 613 P.2d 1158 (1980). Because Centralia's tax is not a burden on property in proportion to its value, it is not a "tax" for purposes of RCW 84.68.010. Injunctive relief is not barred.

## CONCLUSION

Centralia's tax on "solid waste intermodal transfer service" taxes an activity in which only railroads engage. It imposes a burden on railroading not imposed on other commercial and industrial activities. It therefore "discriminates against a rail carrier" under 49 U.S.C. § 11501(b)(4) in violation of federal law. Because injunctive relief is not barred as Centralia contends, we affirm the superior court.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.